Hillsborough
No. 86-089

THE STATE OF NEW HAMPSHIRE

v.

ALFRED GOULET

May 28, 1987

*Stephen E. Merrill,* attorney general (*Bradford W. Kuster,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

SOUTER, J.   During final argument in the defendant's trial on two counts of aggravated felonious sexual assault and one of kidnapping, the prosecutor commented on defense counsel's failure to elicit any testimony indicating that the victim was sexually promiscuous. The defense objected on the ground that the rape shield law, RSA 632-A:6, would have precluded admission of any such evidence, and objected further to the refusal of the Superior Court (*Dalianis,* J.) to give any curative instruction. This appeal followed the defendant's conviction on the two assault charges. We affirm.

The victim had left a Manchester singles' club and was walking through its parking lot to her car when the defendant accosted her. She testified that the defendant forced her into the car with him, demanded silence upon threat of death, and struck her forcefully when she tried to escape. After driving from the parking lot, the defendant made two stops, in the course of which he ripped the victim's dress open to the waist and forced her three times to perform

fellatic and once to have intercourse. After a police cruiser pulled up behind them, the defendant jumped from the back of the car into the front seat, the victim escaped, and the police apprehended the defendant.

The defendant testified that the victim had invited him to go for a drive with her and had then voluntarily engaged in the sexual acts mentioned. He stated that when the police arrived the victim suddenly said that she would tell them he had raped her, whereupon he "went berserk . . . and started hitting her."

At trial, the defendant called as a witness one of the victim's companions at the singles' club on the occasion in question, who testified that the victim was part of a group that customarily visited the club on Tuesday evenings. Counsel questioned the witness about the victim's drinking habits and about her drinking that evening. When the prosecutor objected, defense counsel justified her questions as "relevant to show the types of activity that went on at the club," and proceeded to ask the witness whether members of the group mingled freely at the club or danced with men they did not know. The witness testified that the victim would occasionally mingle with the crowd, although she did not know whether the victim had ever danced with a stranger. Defense counsel did not, however, attempt to elicit testimony from any witness about the victim's private sexual experiences with anyone other than the defendant, nor did she request an opportunity to do so.

At the close of the trial, defense counsel argued to the jury that the club was

> "a place where people go to drink, dance, party, have a good time and enjoy themselves. Now, [the victim] told you that she's not sure if she drank on that evening. She doesn't think she did, but she's not really sure. But it's a place where she would go with her friends, and it wasn't unusual for her to drink when she went there. And her friends would drink when they went there, and people would drink when they'd go to a club like the Club 777.

> \* \* \*

> She stayed at the bar for several hours, talking with her friends, walking through the crowds, mingling, seeing who was there. Maybe did some dancing. And close to closing time, about one or one-fifteen, she left the bar, before her friends left, leaving them inside, she left alone."

In the prosecutor's argument that followed this, he stated that the defendant

"also told you that he met [the victim] and within five minutes she was performing fellatio on him consentually [sic]. There's no evidence that she was drunk. There's no evidence that she's promiscuous. Now, if there was evidence that she was promiscuous, I'm sure [defense counsel] would have brought that up in her cross-examination. But there is simply no evidence to that effect. The only evidence that is submitted and which I submit is a true characterization of [the victim] is that she was just out Tuesday night to have a good time with her friends, to socialize a little bit and to get home early so she could go to her job the next day."

Defense counsel objected to the remark about the lack of any evidence of promiscuity. She claimed it was improper to suggest that the jury should draw an inference from the absence of evidence that would have been inadmissible under the rape shield law's provision that "[p]rior consensual sexual activity between the victim and any person other than the [defendant] shall not be admitted into evidence in any prosecution under this chapter." RSA 632-A:6. The trial judge overruled the objection and refused defense counsel's request for a curative jury instruction, because the evidence to which the prosecutor referred would not necessarily have been inadmissible:

"[I]f there were evidence, for example, that [the victim] were a prostitute or that she was known by people who observed her to do this, to leave the Club 7 every week with a different relatively unknown male, . . . such evidence would be admissible and not barred by the rape shield law."

The court thus recognized the general rule that it would be improper argument to comment on the absence of inadmissible evidence. *See, e.g., Bradley v. United States,* 420 F.2d 181 (D.C. Cir. 1969) (improper comment on failure to call witness whose testimony would have been self-incriminatory and subject to fifth amendment privilege); *State v. Thompson,* 290 N.C. 431, 226 S.E.2d 487 (1976) (improper to refer to failure to call spouse, when such comment on matrimonial privilege prohibited by State law). The trial court nonetheless concluded that the prosecutor's remark was proper because certain evidence of promiscuity would have been admissible in spite of the rape shield law, and the court's reference to prostitution made it clear that the court meant to include evidence of consensual intercourse within the category of admissible evidence. The judge thereby alluded to *State v. Howard,* 121 N.H. 53, 58–59, 426 A.2d 457,

460–61 (1981), in which this court held that the requirement of due process and the right of confrontation limit the application of the rape shield law when evidence of the victim's prior sexual activity with people other than the defendant has a "probative value in the context of [a] particular case [that] outweighs its prejudicial effect on the [victim]." *See also State v. LaClair*, 121 N.H. 743, 745–46, 433 A.2d 1326, 1328–29 (1981) (on like reasoning, defendant may enquire into victim's prior inconsistent statements about her virginity).

The trial judge was correct in overruling the objections. We would not, however, adopt the trial judge's reasoning, which rests on the assumption that any evidence of what might be called sexual promiscuity would be admissible in spite of the rape shield law, with the result that it would normally be proper to comment on the failure of the defense to supply such evidence.

■ This assumption is troublesome because the term "promiscuity" is expansive enough to cover conduct within the scope of the rape shield law, but not necessarily admissible under the *Howard* exception. And even when *Howard* might apply, in a close case a court would run a serious risk of error in assuming the admissibility of evidence without following *Howard*'s procedure. While *Howard* recognizes that the State and National Constitutions may require admission of evidence of a victim's prior sexual activity, admissibility is not automatic simply because the evidence is relevant on credibility. The rape shield law authorizes a victim to claim a privilege of personal privacy, *see State v. Miskell*, 122 N.H. 842, 845, 451 A.2d 383, 385 (1982), which cannot be defeated without a defendant's offer to prove facts that could justify its invasion, *id.* at 846, 451 A.2d at 385–86; *State v. Baker*, 127 N.H. 801, 804, 508 A.2d 1059, 1062 (1986), followed by a hearing to establish those facts and to evaluate the strengths of the competing interests in privacy and effective confrontation. *State v. Howard supra.* Thus, without a *Howard* hearing, a court may have difficulty saying whether proffered evidence would come in, even when it is evidence of sexual activity that some people would describe as promiscuous. Therefore, without an order admitting the evidence, it would be prudent to assume that the rape shield law would keep it out and render any argumentative reference to it improper.

There is, however, a different basis to sustain the trial court in overruling the objection to the prosecutor's comment and refusing to give a curative instruction. The comment can reasonably be interpreted as nothing more than a response to defense counsel's attempts, in cross-examination and closing argument, to present the

victim as a woman of small virtue seeking a stranger for sexual amusement. This intimation was the whole point of defense counsel's fishing for testimony that the victim and her friends went to the club to drink, mingle with the crowd and dance with men they did not know. Even though the fishing netted nothing much, defense counsel stuck to the point in a closing argument that held the victim up as someone who drank at the club, walked through the crowd, "maybe" danced, and invited male pursuit by her solitary departure.

In a word, the defense tried to paint the victim as promiscuous, and there was nothing wrong with the prosecutor's plain contention that the try had failed.

*Affirmed.*

All concurred.