Merrimack
No. 87-004

THE STATE OF NEW HAMPSHIRE

v.

VINCENT COPPOLA

December 7, 1987

*Stephen E. Merrill,* attorney general (*Robert B. Muh,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

SOUTER, J.   A jury trial in the Superior Court (*Bean,* J.) resulted in the defendant's convictions on one count of burglary, RSA 635:1, and two counts of aggravated felonious sexual assault, RSA 632-A:2. He was sentenced under RSA 651:6, II(a) to consecutive extended terms of imprisonment totaling twenty to sixty years for the assaults, and to a further, but suspended, consecutive term of three and one-half to seven years for the burglary. In this appeal, the defendant advances four claims of trial court error: (1) in admitting his pre-arrest statement to the police; (2) in admitting the victim's statement to police investigators at the scene of the crime; (3) in imposing extended terms of imprisonment under RSA 651:6 despite the county prosecutor's failure to specify before trial which of several possible statutory grounds he would rely upon in seeking the enhanced penalties; and (4) in considering circumstantial evidence of prior bad acts by "giv[ing] it such weight as . . . it deserve[d]." We sustain the convictions but remand for reconsideration of the sentences.

The female victim lived alone in Epsom, where she was awakened at 12:14 a.m. on January 24, 1986, by a thumping sound on her front door. She got up to see what was the matter, and as she stood near the source of the noise a hand broke through a glass panel from outside, unfastened the lock and opened the door. A man

entered and struggled with the victim, whom he overpowered, dragged to the bedroom and stripped of her night clothes. After the intruder had forceably engaged in cunnilingus and intercourse with the victim, he dressed himself and left about 12:45 or 12:50, after threatening further harm if the victim reported the crime.

The victim was not deterred and telephoned the police. One officer who arrived at the house about 1:00 a.m. described the victim as "very upset and excited," and another spoke of her as "very hysterical, [having] a very hard time talking to the trooper [who] had a hard time calming her down." The victim herself later recalled her responses to the police as "just kind of raving on . . . ." About 1:15 a.m., the victim was able to tell what had happened, and she gave an account that she substantially repeated at trial.

After listening to the victim describe both her assailant and a car that she had seen near her house when the assailant left, the police focused their suspicion on the defendant. About 2:30 a.m., the police arrived at the defendant's house and spoke with him and his wife. After further investigation, the police returned to the defendant's house that evening and asked him to talk with them again. "Let me tell you something," he replied. "I'm not one of your country bumpkins. I grew up on the streets of Providence, Rhode Island. And if you think I'm going to confess to you, you're crazy." The defendant nonetheless made some further statements, which were not admitted into evidence, and showed the police some clothing for examination in light of the victim's statement.

The defendant remained free, however, until March 6, 1986, the day on which the victim reported that she had found fresh footprints in the snow around her house. When the prints turned out to be about the size that the defendant would have made, he was arrested, charged with the January crimes and committed to the Merrimack County Jail.

Although the defendant did not testify at the ensuing trial, his defiant remark to the police was received into evidence, and his challenge to the admissibility of this statement presents the first issue here on appeal. In the trial court, the defendant did not rest his claim on any tenet of State constitutional law, *see State v. Dellorfano*, 128 N.H. 628, 633, 517 A.2d 1163, 1166 (1986), and he relies here on the fifth and fourteenth amendments of the Constitution of the United States, as applied in a trilogy of cases dealing with the conditions under which a defendant who takes the stand in his defense may be impeached by his prior silence. *Doyle v. Ohio*, 426 U.S. 610 (1976), held that the requirement of fundamental fairness inherent in the due process guarantee bars

the State from impeaching a defendant with evidence that he remained silent after arrest and *Miranda* warnings. The Court reasoned that such silence is insolubly ambiguous and arguably responsive to the assurance implicit in the warnings, that a choice to exercise the constitutional right to silence will carry no penalty. *Id.* at 617–18. Next, the defendant relies upon *Jenkins v. Anderson*, 447 U.S. 231 (1980), which explained *Doyle* by holding that the fifth and fourteenth amendments raise no bar to impeachment by otherwise probative evidence of pre-arrest, pre-*Miranda* silence, where there has been no governmental inducement, such as *Miranda* warnings, to exercise the privilege of remaining silent. Finally, the defendant cites *Fletcher v. Weir*, 455 U.S. 603 (1982), which held that there is no fourteenth amendment bar to a defendant's impeachment by evidence of post-arrest but pre-*Miranda* silence, where again the government has given no affirmative assurance, like *Miranda* warnings, that the choice to keep silent will carry no adverse consequences.

From these cases, the defendant proceeds by two lines of reasoning. In the first, he argues that his boast to be Rhode Island street-wise was tantamount to an invocation of his fifth amendment privilege to remain silent, which he claims was induced by the police when they asked to question him in his house. From this it follows for him that fundamental fairness as espoused in *Doyle* and explained in *Jenkins* forbids any evidentiary use of his statement.

In his second line of thought, the defendant points out that *Jenkins* and *Fletcher* involved nothing more than proof of silence to impeach a defendant who had testified, and he argues that the cases implicitly teach that introducing evidence of pretrial silence against a defendant who maintains his silence throughout his trial offends fifth amendment standards. If we understand the defendant's reasoning, it begins, once again, with the assumption that his statement was equivalent to an invocation of his right to stay silent, which is an ambiguous act for the reason that silence may, but does not necessarily, reflect mere consciousness of guilt. Presumably, the defendant is concerned that the presentation of evidence of such silence as part of the State's case in chief would impermissibly burden his exercise of the privilege to remain silent at trial. For if he relied on that privilege, he would necessarily waive his opportunity to explain that his pre-arrest silence was itself the exercise of his constitutional privilege or was, for some other reason, free from any implication of guilt. The defendant suggests, indeed, that the evidentiary use of his choice to remain silent at his house would be as offensive to the fifth amendment as a

prosecutor's comment on a defendant's choice to remain silent at the trial itself. *See Griffin v. California,* 380 U.S. 609, 615 (1965). *But see, e.g., Jenkins v. Anderson, supra* at 236 (the Constitution does not forbid every governmentally imposed choice that may discourage the exercise of a constitutional right).

Neither line of reasoning is sound, however. The first rests on a misreading of the cases cited. While *Jenkins* did indeed explain that *Doyle* barred impeachment evidence of a defendant's silence after the government had given an implicit assurance that could be understood as inducing that silence, *see Jenkins v. Anderson,* 447 U.S. at 240; *see also Anderson v. Charles,* 447 U.S. 404, 407–08 (1980); *Fletcher v. Weir,* 455 U.S. at 606–07, the present defendant would expand *Jenkins* beyond recognition by equating any occasion to remain silent in response to police questioning with an inducement requiring the application of *Doyle.* Neither *Jenkins* nor *Doyle,* however, supports the defendant's assumption that police questioning, standing alone, may reasonably be regarded as an inducement to silence, so as to render evidence of such silence inadmissible. It is noteworthy that the *Jenkins* majority premised its fifth amendment analysis on *Raffel v. United States,* 271 U.S. 494 (1926), which held that evidence of a defendant's silence at a prior trial was admissible to impeach his testimony at retrial, *Jenkins v. Anderson, supra* at 236; if the jeopardy of a trial is not an inducement sufficient to implicate *Doyle,* then certainly mere pre-arrest questioning must be inadequate to do so. Indeed, *Jenkins* explained that a defendant's silence would be inadmissible to impeach, not because it occurred on an occasion provided by the police, but because it followed some affirmative assurance, like the implication of *Miranda,* that silence would carry no penalty. *Jenkins v. Anderson, supra* at 240. Nothing could be further from such an assurance than a request, unaccompanied by any *Miranda* warning, that the defendant talk to the police.

■ A more significant flaw, however, infecting each of the defendant's lines of reasoning, is the factual unreality of equating his taunt to the police with an invocation of his constitutional right to remain silent. If he had couched his refusal in terms of speech versus silence, it might be arguable that he was claiming a constitutional warrant for his action. But his statement cannot be read as a mere assertion that he, unlike a bumpkin, would not talk; he claimed, rather, that the police were crazy to think that someone of his sophistication would confess. By describing his choice as a refusal to confess, he implied that he had done something to confess about. It was this implication that took the defendant's retort

outside the realm of allusions to the fifth amendment and affirmatively indicated his consciousness of guilt. While post-*Miranda* invocations of a right to silence are insolubly ambiguous, *see Doyle, supra* at 617, pre-*Miranda* express refusals to confess are not. They may be admitted without compromising the interests addressed by the fifth amendment, even assuming that the fifth amendment could be held applicable to pre-arrest silence, *see Jenkins v. Anderson, supra* at 236 n.2, and at 242 (Stevens, J., concurring), or to bar evidence of such silence in the State's case in chief.

The defendant raises a second evidentiary issue by pressing his objection to admitting the victim's statement to the police who interviewed her at her house after the rape. After the victim had testified at trial, the State called a State police officer to the stand to repeat the substance of the victim's account of the crime as she had described it in response to questions the officer had addressed to her some thirty minutes after the attack. The victim's description was not offered in rebuttal to any evidence of a prior statement inconsistent with her testimony at trial, *see* N.H. R. Ev. 801(d)(1)(B), and the defendant objected that the victim's prior consistent statement was inadmissible as hearsay. After the trial court overruled the objection on the ground that the victim had previously taken the stand and had been subject to the defendant's cross-examination, the trooper summarized the victim's original account of the events in question, which agreed with her testimony at trial.

█ Although the defendant is correct that the Rules of Evidence contain no general exception to the hearsay rule for prior statements of witnesses who have been, or still are, subject to cross-examination, it does not follow that the admission of the prior consistent statement was reversible error. Rather, the statement was so certainly admissible as an excited utterance, that there was no error in the receipt of the testimony. *See State v. Goulet,* 129 N.H. 348, 351, 529 A.2d 879, 881 (1987).

█ New Hampshire Rule of Evidence 803(2) describes an excited utterance that may be admitted despite the general rule against hearsay as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The guarantee of trustworthiness that justifies admission of such a statement flows from the declarant's excitement, which is inconsistent with a state of mind disposed to contrive or misrepresent. *See Semprini v.*

*Railroad,* 87 N.H. 279, 280, 179 A. 349, 350 (1935). The declarant's spontaneity, then, is the requisite condition that removes a statement admissible under Rule 803(2) from the sort of "mere narrative" that the hearsay rule would bar from evidence. *State v. Martineau,* 114 N.H. 552, 558, 324 A.2d 718, 722 (1974).

These conditions for receipt of the statement were satisfied. The startling character of the experience described by the victim in this case is not open to question, and the record would not support any serious doubt that she was in a state of excitement when she described that experience to the police. The evidence was uncontradicted that the victim's interview by the police began not more than half an hour after the rapist had left. Two police officers described the victim immediately before the interview as upset, excited and hysterical, and she herself testified that she was virtually "raving" about what had happened to her. She had just received first aid for a serious cut suffered in trying to fend off her assailant, and as soon as the interview was over she was taken off to the hospital. Under such circumstances the fact that the victim gave her statements in answer to questions is in no way inconsistent with the probable spontaneity of her responses, *see State v. Kenna,* 117 N.H. 305, 374 A.2d 427 (1977), and nothing in the record casts any doubt on admissibility under Rule 803(2).

The remaining issues bear not on the question of guilt or innocence but on the propriety of the sentences. The defendant challenges the imposition of extended terms of imprisonment under RSA 651:6 on the ground that the prosecutor gave inadequate notice of his intent to request application of the statute. RSA 651:6, II authorizes a sentencing court to impose an extended term of imprisonment on two conditions. First, the facts must satisfy one of the substantive criteria listed in paragraph I, such as the defendant's serious dangerousness to others due to gravely abnormal mental condition, exceptional cruelty in inflicting death or serious bodily injury, and so on. *See* RSA 651:6, I(a) through (f). Second, "notice of the possible application of this section [must be] given the defendant prior to the commencement of trial." RSA 651:6, II. Although the State gave timely notice of its intent to "recommend a sentence under RSA 651:6 upon conviction," the notice did not indicate which of the substantive criteria the prosecutor would rely on. It was not, in fact, until the trial was over and the sentencing hearing had begun that the State announced its intent to rely on RSA 651:6, I(c), authorizing an extended term if the defendant "has twice previously been imprisoned . . . on sentences in excess of one year." Thus the

defendant argues that the State's notice to him was inadequate in its failure to specify the criterion that the prosecutor would invoke.

This claim must be judged in light of the objective to be served by the pretrial notice, which is to "give the defendant an opportunity to offer evidence to refute the findings required by . . . the statute." *State v. Toto*, 123 N.H. 619, 625, 465 A.2d 894, 898 (1983). If, then, a defendant would have offered evidence at trial with a bearing on the basis later claimed for requesting an extended prison term, and if for some reason the defendant would have a substantially diminished opportunity to present such evidence at the hearing on his sentence, his prejudice should preclude the imposition of any extended term. Absent such prejudice, however, there is no reason to bar application of the statute simply because the notice of intent did not specify grounds.

On this reasoning, there is no merit in the defendant's claim, for there is no prejudice apparent on the record before us. The defendant did not take the stand, and he would hardly have wished to acquaint the trial jury even with mitigating evidence of the circumstances that had led to prior imprisonments. Nor has he made even a claim that he would have had such evidence to offer at his sentencing hearing if he had been given earlier notice. Although we do not foreclose him from seeking to present such evidence when, for other reasons given below, this case is remanded for reconsideration of sentence, there is no ground apparent at this point for questioning the adequacy of the notice he received. In sum, a prosecutor will be prudent to specify the applicable criteria for extended sentences under RSA 651:6, I, as part of his required pretrial notice under paragraph II; but the failure so to specify will not render the statute inapplicable in the absence of actual prejudice.

The defendant's final assignment of error in sentencing rests on the trial court's reception of evidence at the sentencing hearing that in two instances a prowler was active in Franklin, when the defendant lived there in 1981. The testimony in question is remarkably confusing, but as we read the record, it boils down to this. The State established that the defendant had been charged and convicted of one act of criminal trespass and another of attempted burglary, each committed in Franklin in 1981. Over the defendant's objection, the State also presented testimony that during the same time period the defendant had been seen at a house in Franklin the day before it was burglarized, and that a small male with bushy hair, never identified, had been seen jumping from the porch roof

of another house. The court received the evidence of the former incident without comment, and said it would give evidence of the latter such weight as it deserved. We hold that none of this evidence should have been considered.

Although the defendant argues that the issue is governed by *State v. Cote*, 129 N.H. 358, 375, 530 A.2d 775, 785 (1987), in which we held that a sentencing court could not find a pattern of criminal conduct based on acquittals, we believe that *Cote* is inapposite to the instant case, which is controlled by considerations of relevance. The evidence presented to the trial court was insufficient to prove that the defendant was probably the burglar in the first instance or the prowler in the second. To be sure, the record indicated that the defendant had committed other crimes in 1981 by conduct comparable to his appearance at the one house and to the unidentified man's departure from the roof of the other. And while we concede that the comparisons justify strong suspicion that the defendant was the culprit in each of the disputed instances, the evidence does not carry suspicion to the point of probability in either. The trial judge should therefore either have sustained the objection to receipt of the evidence, or have indicated that he would give it no weight, once its speculative character was apparent.

Because, however, the incompetent evidence may have been given some weight in deciding the appropriate level of the sentences, we remand for reconsideration of these sentences by the judge who imposed them. We do not suggest that the sentences must necessarily be modified, but we hold that they should be reduced if the trial judge would have imposed lesser sentences had he not assigned some weight to the evidence in dispute.

*Convictions affirmed; remanded*
*for reconsideration of sentences.*

All concurred.