Hillsborough
No. 90-032

THE STATE OF NEW HAMPSHIRE

v.

KEVIN FAVREAU

June 12, 1991

*John P. Arnold,* attorney general (*Susan G. Morrell,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.   The defendant, Kevin Favreau, was convicted after a jury trial in Superior Court (*Dalianis,* J.) as an accomplice to the sale of a controlled drug (cocaine), RSA 318-B:2, I (Supp. 1990). Challenging his conviction, the defendant argues that the trial court erred in admitting into evidence a witness's testimony that he overheard another person identify a telephone caller as "Kevin." We reverse and remand.

On the evening of December 20, 1988, Detective Paul Gravel of the Nashua Police Department, while working undercover, went with a

confidential informant to the second-floor apartment of Michael Powers at 28 ½ Cedar Street in Nashua. After the informant introduced Gravel to Powers, Gravel told Powers he wanted to buy an eighth of an ounce of cocaine. Powers agreed to sell the cocaine to Gravel, but indicated that he did not have it at the apartment and would have to go to another location to obtain it. Shortly thereafter, Powers, in the presence and within the hearing of Gravel, received a telephone call from someone he addressed as "Kevin." Powers told Gravel that he could get the cocaine delivered and that the price would be $225. Gravel agreed to the purchase and its terms.

Fifteen minutes later, as Powers was looking out the window, he said, "He's here." Gravel gave Powers $225, and Powers left the apartment. According to the testimony of another police officer, who was providing back-up surveillance for Gravel, Powers met the defendant in the hallway of Powers's apartment building. The defendant and Powers spoke for a minute or two, after which the defendant left the building and waited near his van, which was parked outside. When Powers returned to the apartment, he gave Gravel a "baggie" containing cocaine. Gravel and the informant then left the apartment. When they were outside, the defendant approached them and introduced himself as "Kevin." He asked them if they had just purchased "stuff" from the people upstairs. Gravel stated that he had. The defendant said that it was usually "good quality stuff," but that if they needed to buy "quantity and quality," he knew some people in Manchester.

At trial, the defendant offered his own account of the evening in question. He testified that he was at home that evening when a neighbor, Michael McMorin, asked to use his telephone. After completing his call, McMorin asked the defendant if he could borrow his car. The defendant refused. McMorin then asked him to deliver "some papers" to Powers's apartment. Because he wanted to speak with Powers regarding a painting job, the defendant agreed.

When he arrived at Powers's apartment, he was met at the door by Powers, who said that he was "in the middle of something," and asked the defendant to wait outside. When Detective Gravel and the informant left the apartment, the defendant recognized the informant as someone who had offered cocaine to the defendant's wife on a previous occasion. The defendant then accused the informant of trying to involve Powers with drugs.

The defendant argues on appeal that Gravel's testimony that he heard Powers identify the telephone caller as "Kevin" was inadmissible hearsay. The State maintains that the statement was properly

admitted as non-hearsay, either as a non-assertive statement or as the statement of a co-conspirator. The resolution of these claims decides the case.

█ Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted in the statement, N.H. R. Ev. 801(c), which is not specifically excluded as non-hearsay by Rule 801(d). Hearsay is not admissible unless it falls within certain well-delineated exceptions. N.H. R. Ev. 802. Whether a statement is inadmissible hearsay, or whether an exclusion or exception applies, are questions for the trial court, whose determination we will uphold unless it is clearly erroneous. *See State v. Sampson,* 132 N.H. 343, 346, 565 A.2d 1040, 1042 (1989).

Prior to trial, the defendant filed a motion *in limine* seeking to exclude testimony by Detective Gravel of statements made by Michael Powers while arranging the drug transaction. The trial court denied the defendant's motion, finding that "these statements are governed variously by Rule 801(a) as non-statements and/or 804(b)(6) [the general catch-all exception]."

At trial, Detective Gravel testified that he went to the apartment of Michael Powers to purchase an eighth of an ounce of cocaine. After Detective Gravel testified that Powers did not immediately sell him the cocaine, the prosecution elicited the following explanation for the delay:

"Q.    What, if anything, did Mr. Powers indicate was the problem with not being able to deliver the cocaine?

A.    It was indicated he did not have the cocaine with him, and he would have to go to another location to get it.

Q.    At some point in time was there any contact made by anyone with Mr. Powers concerning cocaine?

A.    Yes. He received a phone call shortly thereafter. There was conversation with a subject he referred to as Kevin. He stated that he had someone that was looking to buy an 8-ball, and they had discussion whether or not it could be supplied. He then turned to me and said the price would be $225, and at that time I agreed to it."

Following this testimony, the defendant objected. The trial court then gave the following limiting instruction:

"Ladies and gentlemen, concerning the information relayed to you by Detective Gravel relative to his conversation with

Mr. Powers, the first part of that information concerning the acquisition of cocaine is coming to you under an exception to the hearsay rule of evidence, because Mr. Powers is not an available witness. The reference to Mr. Powers referring over the phone to the fact that he was speaking to someone named Kevin is not coming to you for the truth of who was on the other end of the phone. That is, you are not hearing that piece of evidence as proof that anyone named Kevin was on the other end of the phone. You are merely hearing that piece of evidence because that is what Mr. Powers said, according to Detective Gravel."

Neither this instruction, nor the limiting instruction during the jury charge, however, could change the significance of Detective Gravel's testimony.

The State's contention that Detective Gravel's testimony fell outside the definition of hearsay because it was not offered for the truth of the matter asserted, N.H. R. Ev. 801(c), is disingenuous. If nothing else, the prosecutor's reliance in closing argument on the veracity of Detective Gravel's testimony belies this argument. *See United States v. Figueroa*, 750 F.2d 232, 238 (2d Cir. 1984). The prosecutor's summation indicated quite clearly that the significance of the testimony derived from its implication of "Kevin" as the person on the other end of the telephone. The prosecutor described the telephone conversation as follows:

"There's been evidence that Mr. Powers answered the phone, and when he answers the phone he doesn't jumble around for words, he doesn't remain silent, he doesn't stop and think for a minute before he comes out with an answer. He says, [']Kevin.['] The spontaneity of that response over the phone, ['A]ah, Kevin,['] is an indicator of what is going through Mr. Powers'[s] mind at the time that he makes that statement. He doesn't have time to sit back and reflect and say, ['w]ell, let's see, what am I going to call my supplier today? Am I going to call him Tom, or am I going to call him Bob, or Bill? I think that I'll call him Kevin.['] That's not the way it happens. He answers that phone, ['A]ah, Kevin, yeah I need this, I need that; yeah, what's the price?[']"

The prosecutor in his closing argument spent a great deal of time tying the defendant to this transaction by the very statement that the State contends was *not* offered for its truth. Accordingly, we

hold that Powers's identification of the caller as "Kevin" cannot be admitted as non-hearsay. *See United States v. Figueroa, supra* at 240 (testimony of undercover detective incorporated damaging hearsay, and its admission was error); *State v. Monsalve,* 133 N.H. 268, 270–71, 574 A.2d 1384, 1385 (1990) (statement not offered for limited purpose, but for its truth).

■ The State further argues, however, that the statement was admissible non-hearsay as a co-conspirator's statement under Evidence Rule 801(d)(2)(E). Although the defendant was not charged with conspiracy, "[i]t is well established that the applicability of the 'co-conspirator' exception to the hearsay rule is not conditioned on the presence of a conspiracy count in the indictment." *Ottomano v. United States,* 468 F.2d 269, 273 (1st Cir. 1972), *cert. denied,* 409 U.S. 1128 (1973); *accord State v. Porter,* 404 A.2d 590, 597 n.9 (Me. 1979).

■ The State's argument that the statement is admissible under the co-conspirator exclusion implies a factual finding by a preponderance of the evidence that Powers and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy. *See United States v. Petrozziello,* 548 F.2d 20, 23 (1st Cir. 1977) (questions of admissibility determined by the judge using ordinary civil standard). However, to utilize the co-conspirator exclusion, there must be a finding by the trial court, not by the appellate court in the first instance, that the conspiracy did in fact exist.

The State relies on *State v. Coppola,* 130 N.H. 148, 536 A.2d 1236 (1987), *remanded for new trial on other grounds,* 878 F.2d 1562 (1st Cir.), *cert. denied,* 110 S. Ct. 418 (1989) and the case cited therein, *State v. Goulet,* 129 N.H. 348, 529 A.2d 879 (1987), to support its argument that this court can make the initial determination with respect to the existence of a conspiracy. In *Coppola* the trial court had admitted hearsay for an invalid reason. *Coppola,* 130 N.H. at 153, 536 A.2d at 1239–40. Nonetheless we held that there was no reversible error, because the statement was properly admissible as an excited utterance. *Id.* In *Goulet* we found a different basis to sustain the trial court's decision overruling an objection to the prosecutor's comment in closing argument. *State v. Goulet, supra* at 351–52, 529 A.2d at 881. These cases, however, are distinguishable and not of precedential support in this case, because they do not address the co-conspirator statements in the hearsay context.

Our decision today, reversing the defendant's conviction, rests on the fact that the testimony at issue could properly be admitted in this

case only on the basis of the co-conspirator exclusion, and that there was no finding by the trial court that a conspiracy existed. The conspiracy issue was not raised at any time, so that the defendant's constitutional right of confrontation with respect to the most damning piece of evidence to which he had to respond was taken away, without the necessary finding of a conspiracy and any opportunity of the defendant to present evidence on that issue. To admit this testimony and foreclose the defendant's right on these facts was fundamentally unfair.

The application of the co-conspirator exclusion is the subject of discussion in a well-reasoned case in this circuit. In *United States v. Ciampaglia*, 628 F.2d 632, 638 (1st Cir.), *cert. denied*, 449 U.S. 956, and *cert. denied sub. nom. Bancroft v. U.S.*, 449 U.S. 1038 (1980), the court stated that "[i]t is not difficult to imagine a case in which the basic question of whether a conspiracy existed could be greatly or even dispositively affected by the defendant's evidence." *Id.* This is such a case.

■ There may very well have been sufficient evidence in this case to establish the existence of a conspiracy by a preponderance of the evidence. The defendant was entitled, however, to know at trial that conspiracy was an issue and not to be advised of it for the first time on appeal. Accordingly, we hold that the co-conspirator exclusion is unavailable on appeal, absent notice to the defendant at least by the time the evidence is proffered and the trial court's consideration of that exclusion as a basis for introducing into evidence statements that otherwise would be inadmissible hearsay. Thus, Detective Gravel's testimony referring to "Kevin" was inadmissible hearsay, and the trial court erred in admitting it.

■ The remaining issue is whether this error was harmless. The erroneous admission of hearsay evidence is harmless when it can be said "beyond a reasonable doubt that the inadmissible evidence did not affect the verdict." *State v. Elwell*, 132 N.H. 599, 607, 567 A.2d 1002, 1007 (1989); *State v. Ruelke*, 116 N.H. 692, 694, 366 A.2d 497, 498 (1976).

■ The State maintains that there was "overwhelming evidence" showing that the defendant aided Powers in the sale of cocaine to Detective Gravel. However, the evidence presented against the defendant concerning his knowledge was circumstantial. Although it is well settled in this State that a criminal conviction can be based on circumstantial evidence, *State v. Gilbert*, 115 N.H. 665, 667, 348 A.2d

713, 715 (1975), "we cannot say that the jury may not have drawn entirely different inferences from all the evidence than they would have drawn if the hearsay evidence had not been admitted." *State v. Ruelke supra.* Accordingly, we reverse.

*Reversed and remanded.*

All concurred.