**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2017-0331, <u>State of New Hampshire v. David Decker</u>, the court on May 22, 2018, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, David Decker, appeals his conviction, following a jury trial in Superior Court (<u>Bornstein</u>, J.), on a charge of being a felon in possession of a deadly weapon. <u>See</u> RSA 159:3 (2014). He argues that the trial court erred by not allowing him to present a competing harms defense, <u>see</u> RSA 627:3 (2016), and by allowing the State to introduce certain evidence over his hearsay objection.

We first address whether the trial court erred by not allowing the defendant to present a competing harms defense. "Competing harms" is a justification defense codified by RSA 627:3, I, which provides, in relevant part:

> Conduct which the actor believes to be necessary to avoid harm to himself or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the offense charged.

For the defense to apply, (1) the unlawful conduct must be urgently necessary, (2) there must be no lawful alternative to the unlawful conduct, and (3) the harm to be prevented must outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the violated statute. <u>State v. O'Brien</u>, 132 N.H. 587, 590 (1989). For unlawful conduct to be "urgently necessary," the harm to be prevented cannot be "speculative and uncertain," but must instead constitute a "clear and imminent danger" that is "reasonably certain to occur." <u>Id</u>. (quotations and emphasis omitted). Any lawful alternative to the unlawful conduct must be reasonable. <u>State v. L'Heureux</u>, 150 N.H. 822, 827 (2004).

A defendant seeking to raise a competing harms defense is required to file notice of it, including the grounds for it, with both the State and the trial court within a specified period of time unless the trial court extends the deadline for good cause. <u>N.H. R. Crim. P.</u> 14(b)(2)(B); <u>see</u> <u>State v. Lavoie</u>, 152 N.H. 542, 546 (2005). The trial court is required to grant a defendant's

requested jury instruction on a timely-raised competing harms defense if there is some evidence to support a rational finding in favor of the defense. State v. Lavoie, 152 N.H. 542, 546 (2005). "Some evidence" means more than a minutia or scintilla of evidence. Id. "If the trial court determines that no reasonable person, viewing the evidence in the light most favorable to the defendant, could maintain a reasonable doubt as to the absence of the defense, . . . then the competing harms defense is unavailable to the defendant." State v. Bernard, 141 N.H. 230, 235-36 (1996). We review the trial court's decisions not to allow a competing harms defense for failure to timely raise it, or not to provide a requested jury instruction on the defense based upon a lack of evidence to support it, for unsustainable exercises of discretion. Lavoie, 152 N.H. at 546-47; State v. Chen, 148 N.H. 565, 569 (2002).

The record establishes that on September 16, 2016, while incarcerated at the Northern Correctional Facility in Berlin on a 1992 felony conviction, the defendant was found to possess a piece of metal, commonly referred to as a "shank," see State v. Duran, 162 N.H. 369, 371, 374 (2011), that was approximately two-and-a-half inches long, sharpened on four sides, and meant to stab other inmates. The defendant was searched and found to possess the shank after an investigator reviewed a letter containing a statement asserting that the defendant had a shank. When asked about the shank, the defendant told the investigator that he should "send [the defendant] to Concord or [the defendant would] lay somebody out," which the investigator understood to mean that the defendant would hurt someone seriously.

On April 20, 2017, fifteen days before jury selection, the defendant filed a notice that he may raise a competing harms defense. The State asserts in its brief, and the defendant does not dispute, that under the version of N.H. R. Crim. P. 14(b)(2)(B) governing this case, the defendant was required to provide notice of the defense no later than January 11, 2017. In the notice, the defendant asserted that the New Hampshire State Prison "is a dangerous place to live," that "inmates and Correctional Officers alike take precautions to protect themselves," and that the defendant's possession of a shank was "necessary to avoiding harm to himself when living in an environment where other people are armed and one's safety is constantly in peril."

At a motions hearing, the State objected to the notice, but not on timeliness grounds. The defendant argued that: (1) possessing the shank was necessary because he "could be attacked or . . . killed in the prison for any number of reasons"; (2) "[t]here were three individuals [who] conspired to provide a weapon to somebody to kill [him] in recent months" or within "a couple days" of being found with the shank; (3) he could testify that he is a target because he is serving a life term and provide examples of how persons have tried to kill him during his incarceration; and (4) he could testify that protective custody, as an alternative to carrying a shank, is fallible. The defendant answered affirmatively to the trial court's question whether the

2

result of his argument is that "competing harms . . . [is] going to be a defense in every single case in which [an] inmate in a prison is charged with felony possession," but stated that he could "tailor [his] testimony to . . . why [he] in particular [is] a target." The trial court sustained the State's objection on the basis that the notice was untimely, and because, under the defendant's offer of proof, he had not satisfied the three-part O'Brien test. The defendant did not move to reconsider, or otherwise challenge the trial court's timeliness ruling.

At trial, the defendant testified that on September 15, 2016, he learned that three inmates, who he thought were his friends, wanted to kill him, and had armed another inmate with a shank and attempted to prompt him to kill the defendant. The defendant claimed that he subsequently confronted each member of the alleged plot in his cell, and that each member "started putting the blame on each other." According to the defendant, he is a target because, due to his reputation within the prison, killing him would enhance the reputation of his killer. The defendant admitted that the shank he was found with on September 16 was his. Shanks are, according to the defendant, "part of prison life," and are "all over the place." The defendant claimed that he made his shank only after learning of the plot to kill him. At another point in his testimony, however, he stated that he had the shank before learning of the plot, but that he did not have it before September 15.

The defendant testified that "protective custody" is available for an inmate who the prison administration believes is a target of other inmates for harm, or for an inmate who fears for his life. He also claimed, however, that inmates intentionally scheme to be placed in protective custody for the purpose of harming an inmate who is already there, and that prison officers have at times told other inmates that an inmate has been placed in protective custody.

On appeal, the defendant argues that the trial court erred by ruling, sua sponte, that his notice of defense was untimely. According to the defendant, the State was not prejudiced by the untimely notice, and the trial court did not consider whether sanctions short of precluding the defense were appropriate. The defendant argues further that he satisfied the O'Brien elements under the "some evidence" standard, thus entitling him to a competing harms instruction. The State counters that the defendant failed to preserve his argument that the trial court erred by rejecting the defense on timeliness grounds, that there was no good cause for the untimely notice, and that he failed to establish the O'Brien elements as a matter of law.

At the outset, we agree with the State that the defendant failed to preserve his argument that the trial court erred by ruling, sua sponte, that his notice of defense was untimely. "To preserve issues for an appeal to the Supreme Court, an appellant must have given the [trial] court the opportunity to consider such issues; thus, to the extent that the court, in its decision, addresses matters not previously raised in the case, a party must identify any

3

alleged errors concerning those matters in a motion [for reconsideration] to preserve such issues for appeal." N.H. R. Crim. P. 43(a); see also State v. Mouser, 168 N.H. 19, 27 (2015). Thus, to the extent the defendant believed that the trial court had improperly rejected his notice of defense on timeliness grounds, it was incumbent upon him raise his argument in a motion for reconsideration. See N.H. R. Crim. P. 43(a); Mouser, 168 N.H. at 27. Moreover, because the factual basis for the defense was within the defendant's own knowledge, and because he has not otherwise established good cause for the untimely notice, we cannot say that the trial court's decision not to allow the defense on timeliness grounds was an unsustainable exercise of discretion. See Lavoie, 152 N.H. at 547.

Even if the defendant had provided timely notice, however, we would conclude, upon this record, that the defense was unavailable as a matter of law. Cf. id. (addressing merits of argument that trial court erred by failing to provide a competing harms instruction despite upholding trial court's ruling that the defense was not timely raised). Viewed most favorably to the defendant, the evidence does not establish that arming himself with a deadly weapon was urgently necessary to avoid a danger that was clear and imminent or reasonably certain to occur. O'Brien, 132 N.H. at 590. To the contrary, the evidence shows that, after learning of the alleged plot to kill him, the defendant was comfortable enough to ask each member of the alleged conspiracy about it; no assault on the defendant followed. That the defendant generally described prison as a dangerous place, and described himself as a target for assault, does not render the danger of assault anything more than speculative.

Nor did the evidence, viewed in the defendant's favor, establish that reasonable and lawful alternatives to arming himself were unavailable. L'Heureux, 150 N.H. at 827. Indeed, the defendant admitted that protective custody is available specifically for at-risk inmates. The defendant's concern that protective custody might be circumvented so as to allow access to him by someone intending to harm him is likewise speculative, and does not render the alternative unreasonable. Under these circumstances, we conclude that no reasonable person, viewing the evidence in the light most favorable to the defendant, could have found that the legislature intended the defendant's perceived need to protect himself from the possibility of attack outweighed the harm sought to be prevented by RSA 159:3, namely, the arming of persons who have shown themselves, through past conduct, to have dangerous propensities. O'Brien, 132 N.H. at 590-91; see State v. Smith, 132 N.H. 756, 758 (1990).

We next address whether the trial court erred by allowing the State to introduce certain evidence over the defendant's hearsay objection. Specifically, the defendant argues that the trial court erred by allowing the State to introduce into evidence the statement from the letter asserting that the defendant had a shank that had prompted the defendant's search.

4

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, that is offered to prove the truth of the matter asserted by the statement.  N.H. R. Ev. 801(c); State v. Reinholz, 169 N.H. 22, 28 (2016).  A statement that is not offered to prove its truth is not hearsay.  Reinholz, 169 N.H. at 28.  We will not overturn the trial court's ruling on the admissibility of evidence absent an unsustainable exercise of discretion.  Id.  To establish an unsustainable exercise of discretion, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case.  Id.

In this case, the State offered the content of the letter not to prove the truth of the statement — that the defendant in fact had a shank — but to establish what had prompted correctional officers to investigate and search the defendant in the first instance.  In response to the defendant's objection at trial to a correctional officer's testimony that he became involved in the investigation when he learned of the letter's content from his shift commander, the trial court instructed the jury that it was "not to consider the shift commander's statement for its truth, but merely for the fact that such a statement was made to the witness."  On appeal, the defendant argues that the content of the letter had no probative value other than for its truth.  Relying on State v. Favreau, 134 N.H. 336, 340 (1991), the defendant contends that the State's closing argument, in which it relied upon the letter to counter the defendant's claim that he only made the shank after learning of the alleged plot to kill him on September 15, 2016, undermines its assertion that the content of the letter was not admitted for its truth.  We note, however, that the defendant did not object to the State's closing argument on the basis that the prosecutor had improperly invited the jury to consider the content of the letter for its truth.  See State v. Littlefield, 152 N.H. 331, 343 (2005).

In Favreau, the defendant was convicted of being an accomplice to the sale of a controlled drug when he supplied the drug to the dealer from whom an undercover detective had purchased it.  Favreau, 134 N.H. at 338.  The defendant disputed that he was the supplier.  See id.  The State, however, introduced testimony from the detective that, when the dealer communicated with the supplier by telephone to acquire the drug, the detective heard the dealer refer to the supplier by the defendant's first name.  See id. at 339.  The trial court instructed the jury that the testimony was introduced only "'because that is what [the dealer] said,'" and not to prove the name of the person to whom the dealer spoke.  Id. at 340.  On appeal, we rejected the State's argument that the statement of the defendant's name was not offered for the truth of the matter asserted, observing that the prosecutor, in closing argument, had relied extensively upon the statement to tie the defendant specifically to the sale.  See id. at 340-41.

In contrast to Favreau, the defendant in this case did not dispute that he engaged in the criminal conduct at issue.  To the contrary, he freely admitted

that he possessed the shank, suggesting instead that he possessed it only to protect himself from other inmates.  As discussed above, however, the defendant was not entitled to present a competing harms defense, and "jury nullification is neither a right of the defendant nor a defense recognized by law."  State v. Paul, 167 N.H. 39, 45 (2014).  The content of the letter was introduced in response to the State's questions concerning what had prompted the investigation of the defendant.  We conclude that trial court's ruling that the evidence was admissible to prove what had prompted the investigation was neither clearly untenable nor unreasonable to the prejudice of the defendant's case.  See Reinholz, 169 N.H. at 28-29.

Affirmed.

Lynn, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Eileen Fox,**
**Clerk**