Hillsborough
No. 79-352

### THE STATE OF NEW HAMPSHIRE

v.

### RICHARD S. WHEELER

June 25, 1980

*Gregory H. Smith*, acting attorney general (*Donald J. Perrault*, attorney, orally), for the State.

*Hatfield & Henderson*, of Antrim (*Lloyd N. Henderson* orally), for the defendant.

PER CURIAM. The issues in this DWI case are whether the court properly refused to admit certain evidence of the defendant's blood alcohol content (BAC) at the time of arrest, and whether the superior court may require bail of a convicted DWI defendant who appeals to this court.

One hour into the new year, 1979, Officer Perkins of the Peterborough Police Department stopped the defendant, Richard Wheeler, who was driving on Route 101 in Peterborough. Officer Perkins observed the defendant's performance on certain field sobriety tests and arrested him for DWI. RSA 262-A:62. At the police station, the defendant refused to take the breathalyzer test. On March 19, 1979, the District Court (*Brighton*, J.) tried the defendant for DWI, found him guilty, and fined him $150 plus a fifteen dollar penalty assessment. The court also revoked the defendant's license for a period that cannot be determined from the record and ordered him to attend six classes at the Community Alcohol Information Program (CAIP). The defendant appealed to Hillsborough County Superior Court.

Pending his appeal, the defendant began attending CAIP classes and became familiar with a widely used wallet-size mathematical chart, distributed by the State of New Hampshire, that relates the number of drinks consumed to body weight and gives the probable BAC to two decimal places. He was taught that the BAC "burns off" at a rate of .015 percent per hour.

At his trial in superior court on October 1, 1979, the defendant testified that before his arrest he had consumed six drinks between 8:30 p.m. and 12:30 a.m. Defense counsel then asked him what his BAC was at the time of his arrest. The State objected and the defense offered to prove that the defendant could, through use of the standard mathematical formula, calculate what his BAC probably would have been at 1:00 a.m. if he had consumed six drinks over the preceding four and one-half hours. Defense counsel told the court that the defendant would testify that according to

the chart, taking into account his body weight, the number of drinks allegedly consumed and the "burn-off" rate, his BAC at the time of arrest would have been approximately .054. Under RSA 262-A:63, evidence of such a BAC is relevant to the issue of intoxication, but it is not dispositive. The Court (*Goode*, J.) sustained the State's objection to the offered evidence and noted the defendant's exception.

The jury found the defendant guilty and the court increased his sentence from the $150 fine imposed in district court to $750 plus the 10% statutory fee. The court also stayed execution of the sentence pending appeal to this court but required $200 bail to be posted.

The defendant now contends that the trial court erred in refusing to admit the offered evidence relating to probable BAC at the time of arrest. The State does not challenge the basic reliability of the procedure by which the defendant calculated his probable BAC. The State's argument stems from the absence, present in *Chalmers v. Harris Motors*, 104 N.H. 111, 179 A.2d 447 (1962) and *State v. Baron*, 98 N.H. 298, 99 A.2d 912 (1953), of any blood test type of BAC measurement. It contends that this absence of a "baseline" figure renders the offered evidence so speculative and unreliable as to be inadmissible. We reject this argument.

The fact that no one scientifically measured the defendant's BAC at any time on the night in question does not rob the offered proof of "some tendency to establish a fact of consequence to the determination of the action." *Welch v. Bergeron*, 115 N.H. 179, 182, 337 A.2d 341, 343 (1975); J. MCCORMICK, *Evidence* § 185, at 437 (*E. Cleary* ed. 1972). In our opinion, the absence of such a baseline measurement affected only the weight of the defendant's evidence and not its admissibility. The jury heard the defendant testify that he had six drinks (rather than the usual "two beers") between 8:30 p.m. and 12:30 a.m. Armed with that knowledge, the jury was entitled to hear evidence that would have enabled them to approximate the defendant's BAC at the time of arrest. The evidence was not inadmissible merely because it was less probative on the issue of intoxication than it would have been had a scientific BAC measurement been taken. "[E]vidence having any tendency, however slight, to prove a particular fact is competent proof of the fact." *Mason v. Railway*, 79 N.H. 300, 303, 109 A. 841, 843 (1919); *Curtis v. Laconia Car Co. Works*, 73 N.H. 516, 63 A. 400 (1906); see *State v. Gallant*, 108 N.H. 72, 227 A.2d 597 (1967).

▪ The statute that discusses BAC evidence and its legal effects (RSA 262-A:63), provides that the section "*shall not be construed as*

*limiting* the introduction of any other competent evidence bearing upon the question *whether or not* the defendant was under the influence of intoxicating liquor." (Emphasis added.) We hold that because the evidence offered in this case was competent and relevant to the issue of the defendant's alleged intoxication, it was necessarily admissible.

■ The defendant also challenges the superior court's imposition of a sentence five times greater than that imposed at the district court level. Though our remand renders this question at least temporarily moot, we discuss it because of the possibility that the defendant's new trial might again result in a conviction. Our sentencing statute, RSA ch. 651, and our case law, *see, e.g., State v. Wentworth*, 118 N.H. 832, 395 A.2d 858 (1978) and *State v. Streeter*, 113 N.H. 402, 308 A.2d 535 (1973), make clear that sentencing is within the discretion of the trial court unless the sentence is grossly disproportionate to the crime. N.H. CONST. pt. 1, art. 18.

■ ■ Unexplained *substantial* increases in sentences do not comport with sound judicial policy. Hereafter, whenever the superior court, after a trial de novo, *substantially* increases a sentence imposed by the lower court, the record must reflect the reasons for the change. N.H. CONST. pt. 2, art. 73-A.

Finally, the defendant contends that the court inexplicably and erroneously required him to post $200 bail pending his appeal to this court. In this State the conditions for release on personal recognizance prior to conviction are set by statute.

> "[RSA] 597:6-a *Conditions for Release on Personal Recognizance.* Any person shall be eligible for, *and in the case of a misdemeanor, shall be entitled to,* release on personal recognizance upon satisfying the court or bail commissioner before whom he seeks release, of the following conditions:
>
> I. That he is of such condition, both physical and mental, that his release will jeopardize neither himself nor the public;
>
> II. That his employment, family ties, and residence within the state or other sufficient connection with the state make his failure to appear unlikely;
>
> III. That he has not, prior to his application, failed to appear in any court when required to do so;

IV. That no other special circumstance exists creating a likelihood that he would fail to appear."

(Emphasis added.) There is no evidence before us that the trial court found that the defendant failed to satisfy any of the four statutory conditions. *See Daneker v. State*, 117 N.H. 380, 373 A.2d 1322 (1977). Further, the defendant states in his brief—and it is unchallenged in the State's answering brief—that defense counsel requested and was denied the opportunity to present evidence relating to the defendant's statutory fitness for release on personal recognizance. We note, finally, that the defendant, a New Hampshire resident, had appeared for two prior trials in this matter before the question of bail on appeal arose.

Following conviction, RSA 597:1-a comes into play and provides, as relevant here, for personal recognizance or bail "unless there is a substantial risk" of failure to appear, intimidation of witnesses, etc. We can see no reason for other than personal recognizance in a routine DWI case appealed to this court by a New Hampshire resident, and therefore find the bail set without hearing to have been excessive. *See* N.H. CONST. pt. 1, art. 33; *State v. Adams*, 116 N.H. 529, 363 A.2d 410 (1976); *cf. State v. Marini*, 117 N.H. 71, 369 A.2d 202 (1972).

*Remanded for new trial.*