Concord District Court
No. 97-054

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL DAHOOD

April 8, 1999

*Philip T. McLaughlin*, attorney general (*John A. Stephen*, assistant attorney general, on the brief, and *John C. Kissinger*, assistant attorney general, orally), for the State.

*Gary Apfel*, assistant appellate defender, of Orford, by brief and orally, for the defendant.

THAYER, J. The defendant, Michael Dahood, appeals his conviction for driving while under the influence of intoxicating liquor, second offense, contrary to RSA 265:82-b (1993) (amended 1995, 1996, 1997, 1998), following a jury trial in Concord District Court (*Robbins*, J.). We reverse and remand.

On August 28, 1996, at approximately 11:15 p.m., Trooper Steven Puckett of the New Hampshire State Police was patrolling Interstate 93 when he observed a car in the breakdown lane. The trooper stopped to see if the motorist, later identified as the defendant, needed assistance. The car's hood was raised, and the trooper noticed that the car engine was emitting smoke. When the trooper asked the defendant what the problem was, the defendant replied that he pulled over because the car lost power as he was driving. During this encounter, the trooper noticed that the defendant would not face him while speaking. Upon asking the defendant to face him, the trooper smelled an odor of alcohol emitting from the defendant's mouth. The defendant also appeared uneasy and his eyes were watery. The trooper asked the defendant if he had been drinking, and the defendant admitted consuming two beers.

In order to ascertain whether the defendant was under the influence of alcohol, the trooper asked the defendant to perform field sobriety tests. The trooper administered a battery of sobriety tests, including the horizontal gaze nystagmus test, the Romberg balance test, the finger-to-nose test, the one-leg stand test, and the walk and turn test. In the trooper's opinion, the defendant failed all five tests. When the trooper again asked the defendant how many beers he had consumed, the defendant increased the number from two to four. The trooper, however, did not question the defendant as to when he began and when he finished drinking the four beers. The trooper placed the defendant under arrest for driving while under the influence of alcohol. In response to post-arrest questioning, the defendant informed the trooper that he weighed 190 pounds. The defendant refused to take a blood test and was not asked to submit to a urine or breath test.

The State called the trooper to testify at trial. The trooper admitted that while knowing the time period of alcohol consumption is important, he was unaware when the defendant consumed the four

beers. According to the trooper, he looked for alcohol containers around the defendant's car but was unable to find any. The trooper testified that he "guessed" that the defendant had been drinking that evening. According to the trooper, the only indication he had as to the time period of alcohol consumption was the defendant's performance on the field sobriety tests, the initial contact with the defendant, and the odor of alcohol on the defendant. The trooper, however, admitted that someone who drank earlier in the day might still smell of alcohol.

Also at trial, the State called Dr. Alex Novak to testify as an expert witness. The court concluded that Dr. Novak qualified as an expert in the field of toxicology. With respect to driving while under the influence of alcohol, Dr. Novak testified that a blood alcohol concentration (BAC) of .08 is the legal limit in this State. Despite defense counsel's objections that the proposed testimony was unreliable, the trial court allowed Dr. Novak to testify that the defendant's BAC on August 28, 1996, at 11:15 p.m. was approximately .10, with a margin of error of .02. Dr. Novak based his estimate of the defendant's BAC on the defendant's known body weight and the defendant's admitted consumption of four beers. Dr. Novak admitted having no information as to when the defendant consumed the beers or from which he could reasonably infer the time of consumption. Dr. Novak made several assumptions to estimate the defendant's BAC, including the number of ounces and the percentage of alcohol that each beer contained. He further noted that his estimation of the defendant's BAC was consistent with the trooper's description of the defendant's performance on the sobriety tests. In Dr. Novak's view, the defendant failed the field sobriety tests.

The jury found the defendant guilty of driving under the influence of alcohol. The court imposed a $500 fine, sentenced the defendant to thirty days incarceration, and revoked his license for three years. The defendant appealed.

■ On appeal, the defendant urges us to consider Dr. Novak's testimony as novel scientific evidence, the admissibility of which is subject to independent review. *See State v. Hungerford*, 142 N.H. 110, 117, 697 A.2d 916, 920 (1997). The level of scrutiny we employ in our reliability inquiry turns on the complexity of the test in issue and the likely impact of the evidence upon the fact-finding process. *Id.* Dr. Novak's calculation was not complex. In fact, we have previously concluded that an opinion utilizing a similar calculation was admissible evidence of a defendant's BAC. *See State v. Wheeler*,

120 N.H. 496, 498, 416 A.2d 1384, 1385 (1980), *overruled in part by State v. Landry*, 131 N.H. 65, 66, 550 A.2d 94, 95 (1988). On that basis, we reject the defendant's contention that the proffered testimony constitutes novel scientific evidence, *see United States v. Downing*, 753 F.2d 1224, 1237 (3d Cir. 1985) (defining novel scientific evidence as evidence the scientific fundaments of which are not suitable candidates for judicial notice), subject to independent review. Instead, the trial court's determination that Dr. Novak's testimony was reliable and admissible will be reversed as an abuse of discretion only if the defendant can demonstrate that the ruling was untenable or unreasonable and that the error prejudiced the defendant's case. *State v. Cavaliere*, 140 N.H. 108, 110, 663 A.2d 96, 98 (1995).

■ The defendant argues that the trial court should have excluded Dr. Novak's testimony because, *inter alia*, the proffered testimony was unreliable. We agree. New Hampshire Rule of Evidence 702 governs the admissibility of expert testimony. The rule provides that a qualified expert witness may testify in the form of an opinion or otherwise "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony admitted under this rule "must be reliable to be admissible." *Cavaliere*, 140 N.H. at 109, 663 A.2d at 98 (quotation omitted).

At trial, Dr. Novak testified that the defendant's BAC was between approximately .08 and .12. While the defendant contends otherwise, the State maintains that "Dr. Novak made no attempt to calculate the defendant's alcohol concentration based on his performance of field sobriety tests." According to the State, "[t]he field test results were used as corroborative evidence, to demonstrate that the defendant was displaying signs of impairment that were consistent with Dr. Novak's estimated range of alcohol concentration." Even if we accept the State's position, we hold that Dr. Novak's conclusion that the defendant's BAC ranged between .08 and .12 is unreliable. *See* N.H. R. EV. 702.

■ In *Wheeler*, we held that the use of a mathematical formula to calculate a person's estimated BAC was admissible. *Wheeler*, 120 N.H. at 497-98, 416 A.2d at 1385-86. In urging us to uphold the formula used by Dr. Novak, the State relies upon *Wheeler* and argues that "[t]he formula is . . . the foundation for the 'widely used wallet-sized mathematical chart . . . that relates the number of drinks consumed to body weight and gives the probable BAC to two decimal places.'" In order for the *Wheeler* calculation to be reliable

and therefore admissible, however, we require that the following data be factored into the equation: known or reasonably inferred time of alcohol consumption; known body weight; the amount of alcohol ingested; and the burn-off rate. *See id.* at 497-99, 416 A.2d at 1385-86. In the present case, Dr. Novak lacked evidence as to when the defendant consumed the beers or circumstantial evidence from which to draw a reasonable inference as to the time period of consumption. As timing of alcohol consumption is a prerequisite to the admissibility of the *Wheeler* formula to calculate BAC, we conclude that the trial court abused its discretion in permitting Dr. Novak to testify to the defendant's estimated BAC at the time of arrest. Aside from these requisite factors, any other unknown data or assumptions are "a matter of defense which affect the weight of the evidence but [do] not determine its admissibility." *State v. Arsenault*, 115 N.H. 109, 111, 336 A.2d 244, 246 (1975).

■ We further conclude that the defendant was prejudiced by the expert's testimony that the defendant's BAC was approximately .10, coupled with his testimony that .08 is the legal limit in this State. Indeed, the State conceded at oral argument that Dr. Novak's testimony helped the State prove its case. Because this issue is dispositive, we need not address the defendant's remaining arguments. *See State v. Emanuel*, 139 N.H. 57, 58, 649 A.2d 53, 55 (1994).

*Reversed and remanded.*

All concurred.