Rockingham
No. 2001-522

THE STATE OF NEW HAMPSHIRE

v.

JOSEPH TODD GAMESTER

Argued: February 12, 2003
Opinion Issued: May 2, 2003

*Stephen J. Judge*, acting attorney general (*Malinda R. Lawrence*, senior assistant attorney general, on the brief and orally), for the State.

*Landya McCafferty*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Joseph Todd Gamester, was indicted for second-degree murder, *see* RSA 630:1-b, I (1996), and convicted by a jury of the lesser-included offense of reckless manslaughter, *see* RSA 630:2, I(b) (1996). On appeal, he argues that the Superior Court (*Hollman*, J.) erroneously permitted the State to elicit opinions from the then-deputy chief medical examiner, Thomas Gilson, M.D., that the State had not previously disclosed to the defense. *See* SUPER. CT. R. 98(A)(2)(i). We affirm.

The relevant facts follow. The defendant was charged with second-degree murder following the stabbing death of a Rye man in October 1999. The stabbing occurred during a fight between the two men, after a night of drinking and taking drugs.

In March 2000, during discovery, the State provided the defendant with a report Dr. Gilson prepared of the autopsy performed on the victim. The report describes the autopsy, Dr. Gilson's findings about the victim's body, and his conclusion that the victim "died as a result of a stab wound of the chest which injured his heart and right lung." The State also listed Dr. Gilson on the witness list it provided the defense in November 2000.

In May 2001, the defendant moved *in limine* to preclude the State from eliciting expert opinion testimony. At the hearing on the motion, the defense conceded that because the State had provided expert witness reports, its experts could testify about the reports and the examinations described therein. The defense objected, however, to the experts giving opinions not contained in the reports. The court granted the defendant's motion with respect to expert testimony the State failed to "properly disclose[] in a timely manner."

At trial, the defendant offered two defenses, accident and self-defense. In his opening statement, defense counsel explained that the "physical evidence in this case is . . . that the wound, the fatal wound that [the victim] sustained is more consistent with [the victim] attacking and rushing [the defendant] than any forward thrusting movement by [the defendant]."

The State offered, and the court recognized, Dr. Gilson as an expert in forensic pathology. The defense objected to his testimony to the extent that the State intended to ask him for opinions that were not disclosed in his autopsy report. The court ruled that the State would be allowed to ask Dr. Gilson for his opinion as to the cause of death, his observations about the condition of the body and the conclusions he made as a result of those observations. The court further ruled that the State would be permitted to ask Dr. Gilson if the victim's injuries were consistent with "certain things."

The defendant objected on the ground that, although the State had provided the autopsy report, it had not provided a summary of Dr. Gilson's testimony. The court stated that it would rule on specific questions to which the defendant objected.

Over the defendant's objections, the court permitted Dr. Gilson to give the following opinions:

Q. And, once again, Doctor, in your opinion, could the incise wounds and the stab wounds have been received as part of the same episode of injury?

A. Yes, they could have.

Q. And would you characterize these wounds as offensive or defensive?

. . . .

A. Some forensic pathologists would say these represent what are called defensive wounds. I prefer to say they're wounds that are consistent with a person who may be defending themselves. The reason I don't use the term "defensive wounds" is because I can envision scenarios where a person could sustain these wounds and not be defending themselves. I can't say looking at a wound that's because a person is defending themselves or because they were doing something and they got harmed, you know, when they weren't defending themselves. There's nothing specific there to say this is really truly defensive. It's only compatible with the person defending themselves, but not necessarily so.

. . . .

Q. The stab wound that you observed, is it consistent with the victim lunging forward and impaling himself on a knife simply held stationary and outstretched?

A. No, it isn't.

Q. Why not?

A. Because the trajectory of the knife through the body is such that it's coming at an angle. That tells me that the hand that was holding the knife imparted some direction in causing that wound.

The defendant's own expert opined on direct examination as follows with regard to the cause of the victim's death:

Q. Doctor, do you have an opinion, based on reasonable medical certainty and not on a mere — not on mere possibility, as to whether or not the fatal injury sustained by [the victim] is

> consistent with it having been sustained with the knife being held in [the defendant]'s left hand and [the defendant]'s body being turned in retreat, and then through force — his own force or [the victim]'s combined force bringing him back into [the victim]'s body--would it be consistent with such a movement?
>
> A. I do not believe that the fatal wound would be.
>
> Q. And what — how can you account for — it — would it be your opinion, sir, that the wound that was sustained by [the victim] was a — an awkward movement as opposed to an intentional thrusting?
>
> A. Well, to — to follow the path that the wound describes, I would say that it would have to be a — a thrust outwards on the part of [the defendant] as opposed to forward.
>
> . . . .
>
> Q. And would you say, Doctor, from your observations, that the injury was more probably than not a result of a struggle?
>
> A. It could occur during a struggle, yes.

On cross-examination, the defendant's expert admitted that the "hand that held the knife in this case had to have been in motion" and that the fatal stab wound "could not have been caused by the motion of the victim alone rushing forward onto a stationary knife."

The admissibility of evidence is generally within the trial court's sound discretion. *See State v. Cromlish*, 146 N.H. 277, 280 (2001). We will not reverse the trial court's admission of evidence absent an unsustainable exercise of discretion. *See In re Antonio W.*, 147 N.H. 408, 414 (2002). This same standard applies to review of the trial court's decision with respect to alleged discovery violations. *See Cromlish*, 146 N.H. at 280. To show that the trial court's exercise of discretion is unsustainable, the defendant must show that the decision was clearly unreasonable to the prejudice of his case. *See State v. Lambert*, 147 N.H. 295, 296 (2001).

The defendant argues that the trial court should not have admitted Dr. Gilson's testimony because the State failed to disclose this testimony before trial. The record contradicts this assertion. It shows that the State provided Dr. Gilson's autopsy report, which contained his opinion regarding the cause of the victim's death, and the State listed Dr. Gilson as one of its anticipated witnesses. The defendant implies that Superior Court Rule 98, which governs discovery in criminal cases, required something more. We disagree.

Under Rule 98, the State, within thirty days after the defendant has entered a not guilty plea, was required to provide the defense with, among

other items, "results or reports of physical or mental examinations, scientific tests or experiments, or any other reports or statements of experts, as well as a summary of each expert's qualifications." SUPER. CT. R. 98(A)(2)(i). The State complied with this requirement by providing the autopsy report.

Rule 98 also required the State to provide the defendant with a list of the witnesses it anticipated calling at trial. *See* SUPER. CT. R. 98(C)(1). The State complied with this requirement by listing Dr. Gilson as an expected witness.

■ Contrary to the defendant's assertions, Rule 98 does not oblige the State to summarize the testimony of the experts whose reports the State has provided to the defense. Nor does it mandate that an expert's report contain all of the opinions regarding which the expert may be called upon to testify at trial.

The defendant argues that the court's pretrial order required it to exclude any opinion tendered by Dr. Gilson that was not stated in his report. We do not share this interpretation of the trial court's order.

■ As the State aptly notes, the court's pretrial order merely echoed Rule 98(J), which permits a court to "take such action as it deems just under the circumstances" including "prohibiting the party from introducing the evidence not disclosed," in the event that a party fails to comply with Rule 98. SUPER. CT. R. 98(J). As the court explained:

> Well, I'm going to — I — you know, as a general principle, I will exclude — well, I do exclude — I don't have to write it because it's part of our well-established rule — I will exclude any expert testimony to the extent that it was not disclosed in a timely manner. . . . The expert wasn't disclosed, and what the expert was going to testify to wasn't disclosed in a timely manner. The party offering the expert's testimony is not going to be allowed to get it in. And that's the general principle that applies all the time.

Because the State timely included Dr. Gilson on its witness list and timely provided the defendant with his report, the court's pretrial order did not preclude the court from admitting his testimony.

Moreover, even assuming that the State violated Rule 98 and/or the court's pretrial order, the defendant has failed to show that the admission of Dr. Gilson's testimony prejudiced his case. In the context of a discovery violation, "[a]ctual prejudice exists if the defense has been impeded to a significant degree by the nondisclosure." *State v. Stickney*, 148 N.H. 232, 236 (2002).

The defendant suffered no actual prejudice from the admission of Dr. Gilson's opinions. The defendant's own expert gave similar opinions. The defendant argues that Dr. Gilson's testimony was prejudicial because it "contradicted the defense theory of the case." This type of "prejudice" does not suffice. "Unfair prejudice is not mere detriment to a defendant from the tendency of the evidence to prove his guilt, in which sense all evidence offered by the prosecution is meant to be prejudicial." *Id.* (quotation, brackets and ellipsis omitted).

*Affirmed.*

BRODERICK, DALIANIS and DUGGAN, JJ., concurred.