Strafford
No. 2004-095

### THE STATE OF NEW HAMPSHIRE

### v.

### MICHELLE L. LAVOIE (BYRON)

Argued: June 22, 2005
Opinion Issued: August 18, 2005

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief and orally), for the State.

*Andrew Winters*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. Following a jury trial, the defendant, Michelle L. Lavoie, was convicted of one count of manslaughter. *See* RSA 630:2, I(b) (1996). The defendant appeals from various rulings by the Superior Court (*Mohl*, J.), arguing that the court erred in: (1) allowing an expert witness to testify about her blood alcohol concentration (BAC); (2) striking her notice of affirmative defenses; (3) failing to instruct the jury on the defense of competing harms; and (4) failing to set aside the verdicts or suppress all blood test results because the State negligently failed to preserve her blood samples. We affirm.

On the evening of July 12, 2003, the defendant and the victim, Derran Smith, were out drinking at a bar. In the early morning hours of July 13, 2003, the defendant and Smith went to visit their friend, Marc Labrie. While visiting, Labrie and Smith drank beer and tequila and smoked marijuana. The defendant also drank one or two beers and may have had some tequila. Some time later, the defendant and Smith left Labrie's house.

Outside, Smith was standing in front of the defendant's 1987 Dodge conversion van. The defendant accelerated forward, nudging him with the van. The defendant backed the van up and then drove forward at a faster speed, hitting Smith and pinning him against a tree. The defendant backed the van up again, turned the ignition off and went over to Smith. Emergency personnel were unable to revive Smith.

Wolfeboro Police Sergeant Christopher Keaton arrived on the scene and observed the defendant crying hysterically next to Smith's body. While Keaton spoke with other witnesses, the defendant ran into the woods. Keaton yelled for the defendant to come out and then went into the woods and eventually caught up with her. The defendant fell down and Keaton tried to help her to her feet. Keaton carried the defendant back to the accident scene because she could not stand on her own.

The defendant was taken to the hospital. At 5:35 a.m., in the back of the ambulance on the way to the hospital, the defendant's blood was drawn to be tested for medical purposes. The defendant's BAC was .26. At 7:55 a.m., her blood was taken once more at the hospital for medical purposes and her BAC was .22. State Police Trooper Bruce Ela ordered two additional blood draws for police investigative purposes. Trooper Ela directed that all four blood samples be sent to the state laboratory for testing. Later that day, the police obtained a search warrant for the defendant's blood and she was taken to the hospital for a fifth blood draw. At that time, her BAC was .04.

Prior to trial, the trial court suppressed the two blood draws ordered by Trooper Ela in the hospital. The results of the other three blood draws were admitted into evidence at trial. Based upon these test results, the State's expert forensic toxicologist, Dr. Alex Novak, testified that, in his opinion, the defendant's BAC was .25 at the time of the incident.

The defendant was subsequently convicted on the alternative theories of manslaughter and negligent homicide. The trial court sentenced the defendant on the manslaughter conviction and vacated the negligent homicide conviction. This appeal followed.

The defendant first argues that the trial court erred in allowing Dr. Novak to testify about the defendant's BAC at the time of the crash. She challenges his testimony on the grounds that it was not properly disclosed and was unreliable.

We will uphold a trial court's decision to admit evidence absent an unsustainable exercise of discretion. *State v. Roldan*, 151 N.H. 283, 286 (2004). To show that the trial court's decision is not sustainable, the defendant must demonstrate that the ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.* In the context of a discovery violation, actual prejudice exists if the defense has been impeded to a significant degree by the nondisclosure. *Id.* at 287. The trial court has wide discretion in admitting or excluding expert opinion. *Id.* at 286.

█ The defendant argues that the State's pre-trial disclosure of Dr. Novak and his report did not give the defense adequate notice that at trial he would, by extrapolation, estimate the defendant's BAC at the time of

the incident. Former Superior Court Rule 98(A)(2)(i) (2004) (amended 2004) requires the State to provide the defendant prior to trial copies of all "results or reports of physical or mental examinations, scientific tests or experiments, or any other reports or statements of experts, as well as a summary of each expert's qualifications." In *State v. Gamester*, 149 N.H. 475, 479 (2003), we held that former Rule 98 does not require the State to summarize the testimony of the experts whose reports the State has provided to the defense. Nor does it mandate that an expert's report contain all of the opinions regarding which the expert may be called upon to testify at trial. *Id.*

■ Here, the State notified the defense that Dr. Novak would be called as a witness and provided the defense with the blood test results. Under *Gamester*, this satisfies the requirements of former Rule 98. *See id.*

The defendant next argues that Dr. Novak's extrapolation testimony of the defendant's BAC at the time of the incident was unreliable. We disagree.

We have recognized that based upon the results of a blood alcohol test at a certain time, an expert can calculate the estimated blood alcohol at an earlier time. *Chalmers v. Harris Motors*, 104 N.H. 111, 112-13 (1962); *State v. Baron*, 98 N.H. 298, 299-300 (1953). The defendant argues, however, that for extrapolation testimony to be admissible under *State v. Dahood*, 143 N.H. 471, 475 (1999), Dr. Novak was required to know or reasonably infer the time the defendant consumed alcohol, the defendant's body weight, the amount of alcohol the defendant ingested and the defendant's burn-off rate.

We find that *Dahood* is distinguishable from the present case. In *Dahood*, the defendant refused to take a blood test. *Id.* at 472. Nonetheless, the expert testified that the defendant's BAC at the time he was stopped by the police officer was approximately .10, with a margin of error of .02. *Id.* at 473. The expert based his estimate of the defendant's BAC on the defendant's known body weight and the defendant's admitted consumption of four beers. *Id.* The expert, however, had no information as to when the defendant consumed the beers. *Id.* The expert also made several assumptions in making the estimate, including the number of ounces and the percentage of alcohol that each beer contained. *Id.* Although we reversed the admission of the expert's extrapolation testimony on the facts presented, we reaffirmed our previous holding in *State v. Wheeler* that approved the general use of the mathematical formula to calculate a person's BAC without any blood test of the person's BAC. *Id.* at 475; *see State v. Wheeler*, 120 N.H. 496, 498 (1980), *overruled in part by State v. Landry*, 131 N.H. 65, 66 (1988).

█ Here, Dr. Novak utilized a later blood test BAC measurement to calculate the defendant's BAC at the time of the accident. In making this calculation, Dr. Novak considered the time elapsed, the average "social drinker" burn-off rate and the amount of alcohol in the defendant's stomach that would not yet be absorbed. We find this extrapolation testimony reliable. *See Chalmers*, 104 N.H. at 112-13; *Baron*, 98 N.H. at 300. Any other unknown data or assumptions are matters which affect the weight of the evidence but do not, on this record, preclude its admissibility. *See State v. Arsenault*, 115 N.H. 109, 111 (1975).

The defendant next argues that the court erred in striking the defendant's notice of affirmative defenses as untimely. The admissibility of evidence is generally within the trial court's sound discretion. *Gamester*, 149 N.H. at 478. We will not reverse the trial court's admission of evidence absent an unsustainable exercise of discretion. *Id.* This same standard applies to review of the trial court's decision with respect to alleged discovery violations. *Id.*

There is no dispute that the defendant did not file her notice within the required thirty days. *See* SUPER. CT. R. 98(B)(1) (2004) (amended 2004), 101 (2004). Rather, she argues that because she received untimely discovery from the State, she has established good cause for filing a late notice of affirmative defenses. *See* SUPER. CT. R. 101 (allowing the trial court to extend the time limitations for filing a notice of defense "for good cause shown").

At the final pretrial conference on October 9, 2003, the State filed a motion seeking to bar evidence at trial of any Criminal Code defenses on the basis of lack of notice under Superior Court Rules 98 and 101. That same day, the State provided the defense with a letter in which the prosecutor advised that, during a telephone interview, the defendant's mother reported that the defendant said that, on the night of the incident, Smith and Labrie were pressuring her for three-way sex, they spiked her drinks with Visine and she was in a semi-comatose state. In addition, the defendant's mother stated that the defendant claimed that she ran to her van and thought she was pressing the brake but accidentally pressed the accelerator. On October 16, 2003, six days before trial, the defendant responded with a notice under Rule 101 of her intent to pursue one of two statutory defenses at trial: competing harms, RSA 627:3 (1996), or, in the alternative, self-defense, RSA 627:4(II)(c) (1996).

█ Although the discovery of truth in criminal proceedings should not suffer by an overly technical application of the rules of court, we find that the trial court's application of Rules 98 and 101 was justified in this case. *See State v. Chen*, 148 N.H. 565, 569 (2002). The information provided to

the defense in the October 9, 2003 letter solely concerned statements the defendant allegedly made to her mother. In addition, the defendant had been notified previously that the State might call her mother as a witness. Thus, the factual basis for the defense was reasonably available to the defendant well before she filed the notice. Accordingly, the defendant has not established good cause for filing a late notice of affirmative defenses. Moreover, the trial court ruled that the defendant could introduce evidence pertaining to the alleged sexual assault or attempted sexual assault on the issue of her mental state.

The defendant next argues that the trial court erred in failing to instruct the jury on the defense of competing harms. We will address this argument even though we have upheld the trial court's order striking defendant's notice of this affirmative defense. We review the trial court's decision not to give a jury instruction for an unsustainable exercise of discretion. *Chen*, 148 N.H. at 569. The trial court must grant a defendant's requested jury instruction on a specific defense if there is some evidence to support a rational finding in favor of that defense. *Id.* By "some evidence," we mean that there must be more than a minutia or scintilla of evidence. *Id.*

RSA 627:3 provides in pertinent part that "[c]onduct which the actor believes to be necessary to avoid harm to himself or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the offense charged."

The defendant points to a neighbor's testimony that early that morning, she heard a dog barking, sounds of people arguing, a series of bangs and then a woman screaming hysterically. The neighbor described the screaming as sounding "like a woman being raped." In addition, Labrie testified that Smith proposed three-way sex and the defendant was turned off by the suggestion. The defendant asserts that this was consistent with a theory that she was subject to unwanted sexual advances by Smith. We find that, as a matter of law, this minimal evidence is insufficient to support a competing harms defense to manslaughter. *See State v. O'Brien*, 132 N.H. 587, 590 (1989) (noting that a competing harms defense is only available if the otherwise illegal conduct is urgently necessary, there is no reasonable lawful alternative and the harm sought to be avoided outweighs, according to ordinary standards of reasonableness, the harm sought to be prevented by the violated statute).

Lastly, the defendant argues that the trial court erred in failing to set aside the verdicts or suppress all blood test results when the State negligently failed to preserve the defendant's blood samples. She argues

that the State's negligence violated her due process rights under the State Constitution. N.H. CONST. pt. I, art. 15.

■ In determining whether the loss of apparently relevant evidence has resulted in a denial of due process, the State has the burden to demonstrate that it acted both with good faith, in the sense that it was free of any intent to prejudice the defendant, and without culpable negligence. *State v. Bruce*, 147 N.H. 37, 40 (2001). If the State carries that burden, the defendant may not claim any relief unless she demonstrates that the lost evidence was material, to the degree that its introduction would probably have led to a verdict of not guilty, and that its loss prejudiced her by precluding the introduction of evidence that would probably have led to a verdict in her favor. *Id.*

The defendant's blood was drawn five times, twice at the direction of Trooper Ela, twice by the hospital and once pursuant to a warrant. All five samples were sent to the State laboratory for testing. Multiple notices were sent to the defendant stating that she had thirty days to pick up the samples or they would be destroyed. On August 20, 2002, the first notice was sent by certified mail to the address on the defendant's driver's license and was accepted by her father on August 31, 2002. On September 19, 2002, a second notice was sent to the same address, but was returned, stamped, "Moved, Left No Address." A notice was then sent to the Strafford County House of Correction, but was returned, marked, "Attempted-Not Known." On October 7, 2002, another notice was sent to the defendant's driver's license address that was also returned. At some later point, the defendant attempted to have her own analysis of the samples completed, but was informed that the samples had been destroyed after the thirty days had expired.

The defendant argues that the State was culpably negligent in that it: (1) failed to comply with the notification requirements under RSA 265:86, I (2004); (2) provided a street address to the State laboratory even though the defendant was in custody; and (3) was obligated to ensure that the blood samples were not destroyed because she filed a motion to preserve all physical evidence. The defendant does not argue that, in the absence of culpable negligence, the evidence was material and that its loss prejudiced her. Thus, we must only decide whether the State acted in good faith and without culpable negligence. *See Bruce*, 147 N.H. at 40.

■ We find that the State acted in good faith and without culpable negligence in destroying the samples. The State believed that it complied with the applicable notice requirements prior to destroying the samples. In addition, the State did not believe that the defendant's general request to preserve evidence imposed upon it any additional obligations regarding

either notice or preservation of the samples. The record supports the State's beliefs. The destruction of the blood samples may constitute negligence but, without more, does not amount to culpable negligence. *See State v. Giordano*, 138 N.H. 90, 95 (1993) ("Culpable negligence is something more than ordinary negligence, mere neglect, or the failure to use ordinary care—it is negligence that is censorious, faulty or blamable."). Because the State at all times reasonably believed it was complying with statutory requirements and did not simply ignore court orders, we find that the State acted in good faith and without culpable negligence. Accordingly, the trial court did not err in failing to set aside the verdicts or suppress all blood test results.

*Affirmed.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.