Sullivan
No. 2005-567

### THE STATE OF NEW HAMPSHIRE

v.

### ETHAN VASSAR

Argued: September 12, 2006
Opinion Issued: November 21, 2006

*Kelly A. Ayotte,* attorney general (*Karen E. Huntress,* assistant attorney general, on the brief and orally), for the State.

*Theodore Lothstein,* assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, J. The defendant, Ethan Vassar, was convicted by a jury in Superior Court (*Lynn,* C.J.) of provocation manslaughter for the shooting death of his brother, Nicholas Vassar. *See* RSA 630:2, I (1996). He appeals, challenging the trial court's instruction to the jury not to consider the justification defenses of self-defense and defense of another and its failure to admit evidence of the brother's prior violent acts. We reverse and remand.

The jury could have found the following facts. The defendant shot his brother on June 20, 2004. The events immediately leading up to the shooting were as follows. Shortly after the defendant left his house that day, his brother, who was living in a room above the garage, "stormed" into the house, "madder than hell" because the truck the defendant had started had filled the garage with fumes. He began "yelling and hollering and raging" at his mother. She soon left the house to do errands. Upon her return, the brother again "stormed" into the house and demanded that she give him money. After she gave him money, the mother felt scared because she thought it likely that he would go drinking.

By this time, the defendant had returned to the house. The mother warned the defendant to stay away from his brother as he was "not in a good mood." She also asked the defendant several times if he knew what his brother was doing and where his brother's guns were. She was afraid and told the defendant that she was going to hide upstairs.

The defendant went upstairs to use the computer in his mother's room. While upstairs, he heard a door slam and his brother return to the house. He heard shouting. The brother again started "yelling" and "raging" at the mother, grabbed her by the shoulders and demanded that she give him money. The mother started up the stairs, but the brother "tore pas[t]" her stating: "[W]here do you think you're going, oh you think you are going to bed, well, let me get it ready for you." The brother then kicked down the door to her room, separating it from its casing. As the defendant testified, the door "blew off its hinges." The brother then shoved things around in the room and "growled" at the defendant. The mother testified that in addition to the door being "smashed from its casing," her bed was pulled away from the wall leaving scrape marks on the floor and the brass footboard bent over. The defendant, who watched his brother do these things, testified that his brother looked "[s]cary, worse than I had ever seen him."

When the mother saw what the brother had done to her room, she retreated downstairs. He followed her. While downstairs, he smashed a chair and began punching a beam. He held onto his mother's shoulders and forced her to walk backwards around the beam he had been punching, occasionally waving his fist in front of her face. After some time the brother released his mother and she sobbed on the couch while he continued to berate her for approximately a half hour. He shouted about money, wanting her respect, and killing her and the defendant, as well as any "cops [that] showed up." Finally, he left for the garage and as he was heading to the door she heard him say: "I'm going to kill you and I'm going to kill Ethan. I'm going to kill the cops too."

The defendant was upstairs listening, while this was occurring. As he listened, he felt "sick." The defendant heard his mother "begging for her life," something he had never heard before. He was afraid she was going to be killed.

The defendant did not feel relieved when his brother left for the garage. As he testified:

Q. Did you feel relieved when you heard him leave?

A. No.

Q. Why not?

A. Because I thought that he would be right back.

Q. Why did you think that?

A. To be honest, I thought he was going to get his gun, come right back and kill my mother.

Q.  Why did you think that?

A.  Because of what he said, that he was going to kill her.

Because he was concerned that "[his] mother was about to die," the defendant followed his brother to the garage "in order to stop him" from "com[ing] right back . . . in the house and potentially killing [the] mother." The defendant testified that he went to the garage approximately twenty seconds after the brother left for it. The defendant took a gun with him "to protect [his] mother." He knew that his brother kept a gun in his garage room. When he entered the room, he could not see his brother's hands and, thus, could not tell if his brother had a weapon in his hands. His brother was "crouching low" behind a table. The defendant fired five to six shots at his brother, causing his death. He testified, "I saw Nick and I was too scared to really think about anything at that point other than trying to protect my mother and I shot him."

The State charged the defendant with first-degree murder, alleging that he purposefully caused the death of his brother by shooting him multiple times with a handgun. The trial court instructed the jury not to consider the defenses of self-defense and defense of another. In addition the trial court excluded evidence of the brother's prior violent acts, which the defendant had argued were relevant to his justification defenses.

*I. Jury Instructions*

The defendant first argues that he should have been permitted to raise the defense of justification at trial because there was sufficient evidence to support a rational finding that he reasonably believed that his brother was about to kill him and his mother. The State argues that the evidence was insufficient to support such a finding.

■■■ We review the trial court's decision not to give a jury instruction for an unsustainable exercise of discretion. *State v. Lavoie*, 152 N.H. 542, 547 (2005). The trial court must grant a defendant's requested jury instruction on a specific defense if there is some evidence to support a rational finding in favor of that defense. *Id.* By "some evidence," we mean that there must be more than a minutia or scintilla of evidence. *Id.* In reviewing the trial court's refusal to give a requested self-defense instruction, we search the record for evidence supporting the defendant's request, *State v. Chen*, 148 N.H. 565, 569 (2002), including evidence that the brother was "about to use unlawful, deadly force." RSA 627:4, II (1996). RSA 627:4, II provides in part:

> A person is justified in using deadly force upon another person when he reasonably believes that such other person:

(a) Is about to use unlawful, deadly force against the actor or a third person.

A belief which is unreasonable, even though honest, will not support the defense. *State v. Holt*, 126 N.H. 394, 397 (1985).

█ The jury could have concluded from the testimony that the defendant reasonably believed deadly force was necessary to stave off the threat of "unlawful, deadly force." RSA 627:4 II(a). Based upon our review of the evidence, we hold that there was "some evidence" that the defendant reasonably believed that his brother was about to use deadly force against him and/or their mother. This evidence included the testimony about the brother's out-of-control raging behavior within approximately ninety seconds of the shooting. It also included evidence that, during his rant, the brother repeatedly threatened to kill the defendant and his mother. The last words the mother heard when the brother left to go to the garage were that the brother was going to kill her, the defendant and any police who might arrive. The defendant overheard these threats as well as his mother begging for her life, something he had never heard before. The evidence also included the defendant's testimony that he knew that the brother had a gun in his room, and that when he entered the room, the brother was crouching behind a table and he could not see his hands. The evidence further included the defendant's testimony that he thought that the brother would come "right back" into the house and kill his mother. This evidence was sufficient to support a rational finding that the defendant reasonably believed that the brother was about to kill him or his mother. While we express no opinion with respect to whether the jury's verdict was correct in this case or whether the defendant may be convicted of the same offense upon retrial, we hold that the trial court erred when it did not permit the defendant to raise self-defense or defense of another as defenses and instructed the jury that it could not consider these defenses.

## II. Admission of Evidence of Prior Bad Acts

The defendant next argues that evidence of the brother's prior bad acts should have been admitted to prove the reasonableness of his belief that he faced an immediate threat requiring the use of deadly force. He specifically sought to introduce evidence that: (1) during the twenty months prior to his death, the brother's "temper tantrums" increased in "frequency" and "violence"; (2) he was "savage[ly] beat[en]" by the brother four months before the shooting; and (3) two weeks before his death, the brother had been drunk, "cranking" shells into his shotgun, demanding that his mother fetch a beer for him while he held the gun, and drunkenly firing his shotgun and a .22 caliber rifle out the window of his room. The

trial court excluded this evidence because it had determined as a matter of law that no justification defenses were available to the defendant. We hold that, to the extent this evidence was excluded merely because no justification defenses were available to the defendant, the trial court erred.

The defendant argues that this evidence of "other crimes, wrongs, or acts" should be admitted under New Hampshire Rule of Evidence 404(b). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *State v. Dukette*, 145 N.H. 226, 230 (2000), we determined that a defendant's state of mind was one of the "other purposes" for which "other crimes, wrongs, or acts" may be admissible under Rule 404(b) in a self-defense case. In *Dukette*, the defendant introduced evidence of the victim's prior violent acts. *Dukette*, 145 N.H. at 227. The State sought to introduce, as rebuttal evidence, the defendant's "specific instances of aggressive conduct toward the alleged victim." *Id.* at 229. The trial judge ruled that such evidence was inadmissible. *Id.* We reversed, finding the evidence admissible under Rule 404(b). *Id.* at 232.

Until now, however, we have not addressed the admissibility of the *victim's* other acts known to a defendant claiming justification. In the interest of judicial economy, we address this issue because it is likely to arise upon remand. *See State v. Dowdle* 148 N.H. 345, 349 (2002).

The defendant urges us to accept the logical analog of *Dukette*, which would allow for evidence of the victim's other violent acts insofar as they are relevant to the defendant's state of mind where the defendant has raised self-defense or defense of another. The evidence would come in to support the defendant's justification claims, not to rebut them.

We hold that the principles in *Dukette* apply equally in this case. A number of courts which, like New Hampshire, base their rules, in part or in whole, upon the Federal Rules of Evidence, rely upon Rule 404(b) to admit evidence of a victim's other bad acts when the defendant has raised self-defense or defense of another. *See United States v. Gregg*, 451 F.3d 930, 935 (8th Cir. 2006); *State v. Taylor*, 817 P.2d 488, 491 (Ariz. 1991); *State v. Robinson*, 536 N.W.2d 1, 2 (Minn. 1995). As the Third Circuit Court of Appeals observed: "Although there is no specific reference in the Federal Rules of Evidence to admissibility for th[is] purpose, we do not read the Rules as changing the prior precedent under which certain acts of violence

by the victim are admissible to corroborate defendant's position that he 'reasonably feared he was in danger of imminent great bodily injury.'" *Government of Virgin Islands v. Carina*, 631 F.2d 226, 229 (3d Cir. 1980).

█ This is a case, like *Dukette*, in which the state of mind of the defendant is at issue because of justification claims. Unlike *Dukette*, the State is not offering evidence to rebut the defendant's evidence on state of mind, but rather the defendant is offering evidence of the victim's prior bad acts to show the defendant's belief that the victim was about to use deadly force was reasonable. RSA 627:4, II. As in *Dukette*, the evidence is being offered for a purpose other than propensity. It is being offered to shed light on the defendant's state of mind, which is a permissible use of such evidence under Rule 404(b).

We do not at this time address the admissibility of the specific acts the defendant sought to introduce, as the trial court did not consider them in the first instance.

In conclusion, we find that it was error for the trial court to prohibit the defendant's justification defenses. We also hold that the evidence relative to these defenses, which was barred by the trial court, may be admissible under Rule 404(b).

*Reversed and remanded.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.