# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2013-0449, <u>State of New Hampshire v. Judith Tompson</u>, the court on June 9, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Judith Tompson, appeals her convictions for felony reckless conduct, <u>see</u> RSA 631:3 (2007), resisting arrest, <u>see</u> RSA 642:2 (2007), and disobeying a police officer, <u>see</u> RSA 265:4 (2011), arguing that the Superior Court (<u>McHugh</u>, J.) erred in: (1) denying her motions to dismiss the reckless conduct and resisting arrest charges for insufficient evidence; (2) denying her request for a competing harms instruction on the charge of disobeying a police officer; and (3) recommending as part of her sentence that the county correctional authority conduct a mental health examination.

The defendant first argues that the trial court erred in denying her motion to dismiss the felony reckless conduct charge alleging that she placed the sheriff's deputy in danger of serious bodily injury by operating her motor vehicle in reverse, requiring the deputy to reverse his cruiser to avoid a collision. She argues that the evidence was insufficient to support the conviction.

"When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>State v. Zubhuza</u>, 166 N.H. 125, 128 (2014) (quotation omitted). "We consider all the evidence and all reasonable inferences therefrom in the light most favorable to the State." <u>Id</u>. (quotation omitted). "The defendant bears the burden of demonstrating that the evidence was insufficient to prove guilt." <u>Id</u>. (quotation omitted).

The record shows that on November 14, 2011, Deputy Sheriff Scott Peltier, a law enforcement officer with the Rockingham County Sheriff's Department, was attempting to serve civil process on the defendant. This was his ninth attempt. On each prior attempt, he knocked on the defendant's apartment door, and no one answered. On this occasion, he was sitting in his cruiser when he observed the defendant walking out of her condominium apartment toward her car. The defendant testified that she ran out of milk and was headed for the store. The officer, who was wearing his uniform, exited his

cruiser and called out the defendant's first name. The defendant turned around, looked at the officer, and then frantically started to unlock her car door and enter the vehicle. By the time the officer reached the defendant's driver's side door, she was in her car with the door closed. She looked up at the officer and quickly backed out of her parking space, brushing his pant leg with her car. Although the officer yelled at her to stop and slapped the trunk of her car, she proceeded out of the parking lot without slowing down for the speed bumps and turned right onto Cluff Crossing Road without stopping at the intersection.

The defendant, who testified in her defense, denied hearing the officer call her name after she left her apartment and insisted that she was unaware of his presence until he slapped the trunk of her car. She testified that she did not "see him motioning to me or anything so [she] started driving off."

To catch up with the defendant on Cluff Crossing Road, the officer estimated that it was necessary to drive approximately sixty miles per hour in a thirty mile-per-hour zone. The defendant turned right onto South Policy Road, even though the right turn light was red. As the officer pursued her on South Policy Road, with the cruiser's emergency lights and siren activated, she continued driving down the road while other vehicles were pulling over. The defendant testified that she tried to stop but "there was no place to pull over." She then quickly turned into the parking lot of a utility company. The officer stopped behind her, exited his cruiser, and ordered her to turn off her engine. The defendant testified she realized that the officer was coming for her, but she did not know why. When he took two steps toward her vehicle, she drove out of the parking lot and back onto the busy street, without stopping at the intersection, heading back home.

At the intersection with Cluff Crossing Road, the defendant pulled into the left-hand turn only lane and stopped at the red light. The officer drove up behind her, opened the door to his cruiser, stepped out, and ordered her to turn off her car's engine. Instead, the defendant proceeded through the red light onto Cluff Crossing Road. She returned to her apartment parking lot and parked in the same space she had occupied previously. The officer stopped his cruiser directly behind the defendant's vehicle. The officer shifted into reverse gear, and when he saw the brake lights on the defendant's vehicle illuminate, he "floored it" in reverse to avoid a collision. The defendant's vehicle "popped out" of the parking space, reversing "[a] lot faster than she should have been," continuing approximately sixty feet "straight back to the edge of the grass at the other end of the parking lot."

To prove that the defendant acted in a reckless manner, the State was required to show that she was aware of but consciously disregarded a substantial, unjustifiable risk that serious bodily injury would result from her conduct. State v. Belleville, 166 N.H. 58, 62 (2014); RSA 631:3. Reckless

2

conduct is a class B felony if the person uses a deadly weapon as defined in RSA 625:11, V.  See RSA 631:3, II.  A deadly weapon as defined in RSA 625:11, V (2007) is "any firearm, knife or other substance or thing which, in the manner it is used, intended to be used, or threatened to be used, is known to be capable of producing death or serious bodily injury."  Whether a motor vehicle driven in a reckless manner is a deadly weapon is a question of fact for the jury to decide based upon the totality of the circumstances.  State v. Hull, 149 N.H. 706, 715 (2003).  The defendant argues that the evidence was insufficient to show that she drove her vehicle in a manner that made it a deadly weapon because when she returned to her parking space, she was not aware that the officer's cruiser was behind her vehicle.  Moreover, she argues, there was no evidence of her speed backing up, and the officer testified only that the collision would have damaged his cruiser and "maybe" injured him.

The record shows, however, that even if the defendant was not aware that the officer had stopped his cruiser directly behind her vehicle, she knew that he was pursuing her closely in his cruiser and that he had stepped out of his cruiser on the three previous occasions when her vehicle was not moving.  Based upon this record, we conclude that a reasonable juror, viewing all the evidence and all reasonable inferences therefrom in the light most favorable to the State, could have found beyond a reasonable doubt that the defendant, in the manner in which she operated her motor vehicle, consciously disregarded a substantial and unjustifiable risk that she would strike the officer or collide with his cruiser, causing him serious bodily injury.  Accordingly, we conclude that the evidence was sufficient to support the conviction.  See Zubhuza, 166 N.H. at 128; Hull, 149 N.H. at 715.

The defendant also argues that the trial court erred in denying her motion to dismiss the resisting arrest charge, arguing that the evidence was insufficient to support the conviction.  A person is guilty of resisting arrest when "the person knowingly or purposefully physically interferes with a person recognized to be a law enforcement official . . . seeking to effect an arrest or detention of the person . . . ."  RSA 642:2; see State v. Lindsey, 158 N.H. 703, 705 (2009).  The officer testified that after the defendant drove her car in reverse across the parking lot, she shifted gears, drove forward, and returned to her parking space.  The defendant testified that when she returned to the apartment parking lot, she began to suspect that the officer's presence had something to do with her civil case against the condominium association.  After waiting in the car for a few minutes, she quickly exited the vehicle and ran toward the door of her apartment.  When she observed the officer approaching on foot, she changed course and ran around the side of the building.  When the defendant ignored the officer's order to stop, he tackled her to the ground.  The defendant denied seeing the officer in the vicinity or hearing his command to stop.  She testified that the officer "came flying at me," "tackle[d] me," and "knock[ed] me down."  The officer testified that she "had her hands locked underneath her," and after a Salem police officer arrived for assistance, the

defendant "was trying not to allow us to get her arms." He testified that although they "managed to get her hands," she was "rolling around, kicking at us," and "screaming at the top of her lungs." The defendant denied trying to kick the officer and argues that "[t]he alleged 'kicking' was not interference or aggression, but a reaction to disorientation, pain, and fear."

The credibility of the witnesses and the proper weight to be given to their testimony were issues for the jury to resolve. See State v. Ericson, 159 N.H. 379, 386 (2009). The jury was free to accept or reject any portion of the witnesses' testimony in its deliberations. Id. "When there is conflicting factual testimony, we defer to the findings of the jury unless no reasonable person could have come to the same conclusion." Id. (quotation omitted). Based upon this record, we conclude that a reasonable juror, viewing all the evidence and all reasonable inferences therefrom in the light most favorable to the State, could have found beyond a reasonable doubt that the defendant knowingly or purposefully physically interfered with a law enforcement official seeking to effect her arrest or detention. Accordingly, we conclude that the evidence was sufficient to support the conviction. See Zubhuza, 166 N.H. at 128; Lindsey, 158 N.H. at 705.

The defendant also argues that the trial court erred in denying her request for a competing harms instruction regarding the charge of disobeying a police officer. The trial court must grant a defendant's requested jury instruction on a specific defense if there is some evidence to support a rational finding in favor of that defense. State v. Lavoie, 152 N.H. 542, 547 (2005). "By 'some evidence,' we mean that there must be more than a minutia or scintilla of evidence." Id. We review the trial court's decision not to give a jury instruction for an unsustainable exercise of discretion. Id.

RSA 627:3 (2007) provides in pertinent part that "[c]onduct which the actor believes to be necessary to avoid harm to himself or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the offense charged." The defendant argues that she presented "some evidence" from which a jury could have found that she had a legitimate fear of the officer, justifying her need to drive away from him in the parking lot of her apartment building and later in the parking lot of the utility building. We have held that the competing harms defense is "limited to acts directed to the prevention of harm that is reasonably certain to occur," and "is not intended to justify acts taken to foreclose speculative and uncertain dangers." State v. O'Brien, 132 N.H. 587, 590 (1989) (quotations and citations omitted). Based upon this record, we cannot conclude that the defendant's claimed fear of the officer warranted a competing harms instruction. Moreover, the defense is available only when no lawful alternative is available. Id. In this case, the defendant has failed to show that no lawful alternatives, other than driving away, were available to protect her from the perceived threat. Accordingly, we

cannot conclude that the trial court unsustainably exercised its discretion in declining to give a competing harms instruction.  See Lavoie, 152 N.H. at 547.

Finally, the defendant argues that the trial court erred in recommending as part of her sentence that the county correctional authority conduct a mental health examination.  The trial court has broad discretion in its sentencing decision "to achieve the goals of punishment, deterrence, protection of society and rehabilitation."  State v. Martin, 164 N.H. 687, 689 (2013) (quotation omitted).  We review a trial court's sentencing decision for an unsustainable exercise of discretion, State v. LeCouffe, 152 N.H. 148, 153 (2005), which means that we review the record to determine whether it contains an objective basis to sustain the trial court's discretionary judgment, State v. Lambert, 147 N.H. 295, 296 (2001).  The defendant's reckless conduct, as described by the officer and found by the jury, placed the officer in danger of serious bodily injury, and was apparently part of an elaborate effort to avoid being served with civil process.  The defendant's contrary description of her encounter with the officer, and her explanations for her conduct, were implausible, and support the court's recommendation that the defendant undergo a mental health examination.  Accordingly, we conclude that the record is sufficient to support the trial court's recommendation.  See id.

We have considered the remaining arguments in the defendant's supplemental brief and conclude that they are insufficiently developed, see State v. Blackmer, 149 N.H. 47, 49 (2003), and warrant no further consideration, see Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**

5